**STATE of Minnesota, Respondent,**

v.

**Walter Paul HOPPE, Appellant.**

No. C6–01–843.

Court of Appeals of Minnesota.

March 19, 2002.

Review Denied May 14, 2002.

Mike Hatch, Attorney General, St. Paul; and Robert E. Pottratz, Melrose City Attorney, Melrose, for respondent.

John M. Stuart, State Public Defender, Charles F. Clippert, Assistant Public Defender, Minneapolis, for appellant.

Considered and decided by LANSING, Presiding Judge, RANDALL, Judge, and HUSPENI Judge.*

## OPINION

R.A. RANDALL, Judge.

Appellant challenges his conviction for gross misdemeanor DWI, arguing that the prosecutor committed prejudicial misconduct in closing argument by suggesting that appellant's previous DWI convictions showed propensity, indicating a conviction was necessary to protect society, commenting on the defense's failure to rebut the state's evidence, and disparaging the defense by telling the jury that appellant was "snowing" the jury and that a portion of appellant's defense theory was ridiculous. Appellant also argues that the district court erred in admitting Hoppe's entire Minnesota driving record because the record contained stale impaired-driving convictions from 1987. We reverse and remand.

## FACTS

In June 2000, appellant Walter Hoppe was arrested for driving under the influence of alcohol after Hoppe failed a series of field sobriety tests and a preliminary breath test resulted in a .15 reading. The intoxilyzer tests, administered approximately one hour after Hoppe's arrest, resulted in a .163 and a .165, which yielded an official result of .16. Although Hoppe presented the arresting officer with a yellow driver's license application from the Department of Motor Vehicles, the officer ran a check of Hoppe's Minnesota driving record and discovered that his Minnesota driver's license was revoked. The officer also discovered that Hoppe has two prior impaired-driving convictions in Minnesota from 1987 and four impaired-driving convictions in Montana from 1992 to 1996.

Hoppe was charged with gross misdemeanor driving under the influence of alcohol and gross misdemeanor driving with a blood-alcohol concentration in excess of .10, both of which are based on two or more convictions within ten years of the current incident. Hoppe did not stipulate to his prior convictions so the state of-

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. Art. VI, § 10.

fered, and the district court admitted into evidence, Hoppe's Montana driving record. Hoppe also was charged with gross misdemeanor driving under the influence with a revoked driver's license due to a prior driving under the influence conviction. Hoppe argued that he reasonably believed his Minnesota driver's license was not revoked so the state offered, and the district court admitted into evidence, a certified copy of Hoppe's Minnesota driving record. In addition to the revocation entry, Hoppe's Minnesota driving record also listed stale impaired-driving convictions from 1987. A jury found Hoppe guilty of all charges, and Hoppe moved the district court for a new trial arguing that the prosecutor committed misconduct in his closing argument. The district court denied Hoppe's motion, and he now appeals from his conviction.

## ISSUES

I. Did the prosecutor commit misconduct in his closing argument, and, if so, does the misconduct require a new trial?

II. Did the district court err in admitting a certified copy of appellant's entire Minnesota driving record?

## ANALYSIS

I. Prosecutorial Misconduct

■ A reviewing court will not reverse a district court's denial of a new trial motion based on alleged prosecutorial misconduct unless

the misconduct, considered in the context of the trial as a whole, was so serious and prejudicial that the defendant's constitutional right to a fair trial was impaired.

*State v. Johnson*, 616 N.W.2d 720, 727–28 (Minn.2000) (citations omitted).

■ Hoppe argues that the prosecutor committed misconduct by improperly referring to Hoppe's prior criminal convictions and suggesting that the prior convictions demonstrated a propensity to commit the charged crime. Specifically, the prosecutor stated:

There are a number of things that I was able to get in for your knowledge about what has been going on in Mr. Hoppe's life over the past, let's say fifteen years. Mr. Hoppe, it's pretty obvious has a serious problem with alcohol and with driving motor vehicles and he has not been able to stop doing both and if he wants to consume alcohol, we people of the state of Minnesota say, you go right ahead, but don't get behind the wheel. Please. We beg of you, don't do that, and six times in the past has been ignored. We are now here for number seven.

■ Although a prosecutor may refer to a defendant's prior criminal record to impeach the defendant's character, he may not use prior convictions to gratuitously attack a defendant's character. *State v. DeWald*, 463 N.W.2d 741, 745 (Minn.1990). It is also inappropriate for a prosecutor to present arguments calculated to inflame a jury's passions or prejudices. *State v. Salitros*, 499 N.W.2d 815, 817 (Minn.1993). Instead of referring to Hoppe's previous convictions solely to demonstrate the elements of the charged crime, the prosecutor suggested that Hoppe has a serious alcohol problem and has not been able to stop drinking and driving, given his previous six convictions. The implication is that, unless the jury rendered a guilty verdict, Hoppe would continue to drink and drive. We conclude that the prosecutor's comments were calculated to inflame the jury's passions by attacking Hoppe's character; specifically his inability to abstain from drinking and driving and his previous convictions.

■ Second, Hoppe argues that the prosecutor's closing argument inflamed the jury's passions by indicating that a conviction was necessary to protect society. The prosecutor told the jury:

> We are trying in the state of Minnesota to do like all the other states are. We are trying to get people to understand that they have to get designated drivers. If you are going to drink, fine, but transportation now becomes something you have to find somebody else to do for you. You have to find a designated driver, somebody, a sober cab, whatever you want to call it, because we're all out on the roads too and our loved ones are out there and we don't want something bad happening. And a forty one percent drop in fatalities since 1992—
>
> * * * * 1
>
> There's been a decrease because we are trying to get the message out to stop drinking and driving. * * * Your job is to study the evidence and come to the conclusion that there was a drunk driver on the road on June 17th and thank God [the arresting officer] stopped him and got him off the road before he went any further and did any more damage. Six times in thirteen years is time to stop. I would ask you to please do that.

■ Like the previous comments addressed above, these statements have the effect of inappropriately referring to character evidence and inflaming the jury's passions. It is improper for a prosecutor to urge the jury to protect society with its verdict. *State v. Duncan,* 608 N.W.2d 551, 556 (Minn.App.2000), review denied (Minn. May 16, 2000). A prosecutor must not "distract the jury from its proper role of deciding whether the state has met its burden." *State v. Ashby,* 567 N.W.2d 21,

27 (Minn.1997) (citation omitted). The inference drawn from these statements is that the jury should convict to protect their "loved ones" and Minnesota's citizens from future harm. The remarks could also be construed as asking the jury to send Hoppe a message, via a guilty verdict, that it is time for him to stop drinking and driving. Such remarks constitute misconduct. The remarks distract the jury from its duty of determining whether the state met its burden of proof beyond a reasonable doubt.

■ Third, Hoppe argues that the prosecutor impermissibly commented on Hoppe's failure to contradict the state's evidence. The prosecutor argued to the jury:

> The defense is going to come and tell you, well, his eyes were red because he was a smoker. And he's got something wrong with his ankles, that's the balance problem. And they don't talk about the horizontal gaze Nystagmus test. Mr. Hoppe at least didn't try to explain why he was failing that test. Doesn't have a very good explanation—doesn't have any explanation for the .16 test result from the intoxilyzer, the two test results there. Folks, there's an old saying that if something walks like a duck, quacks like a duck, has feathers like a duck, it's a duck. It's not something else.

■ A prosecutor may challenge a defendant's rebuttal theory without shifting the burden of proof to the defense. *State v. Race,* 383 N.W.2d 656, 664 (Minn. 1986). But it is improper for a prosecutor to comment on a defendant's failure to contradict testimony. *State v. Porter,* 526 N.W.2d 359, 365 (Minn.1995). A prosecutor may "specifically argue that there was

---

1. At this point, Hoppe's attorney objected, and the court sustained the objection, ruling that the prosecutor was arguing facts not re-ceived into evidence. *Even after the court's ruling, however, the prosecutor continued his previously interrupted sentence.*

no merit to the defense," but the prosecutor is not allowed to belittle the defense. *State v. Williams*, 525 N.W.2d 538, 549 (Minn.1994).

Hoppe testified at trial that he has bad ankles and sinusitis, which affect his balancing ability. He also testified that he has allergies, is a smoker, and was around smokers the evening of his arrest, which accounted for his bloodshot eyes. He further testified that the bright, flashing lights from the police cars irritated his eyes. The prosecutor could challenge Hoppe's rebuttal theory that he failed the field sobriety tests for reasons other than intoxication, but the prosecutor should not have commented on Hoppe's failure to refute the state's evidence.

■ Finally, Hoppe argues that the prosecutor disparaged the defense in his rebuttal argument. In response to Hoppe's argument that the intoxilyzer test was inaccurate, the prosecutor argued to the jury:

> [T]he burden is showing a .10 or more. Well, if we have a .16, taken roughly forty five minutes after the stop occurred, and if you look at the intoxilyzer test record which you will have that's in evidence, you will see that there's a different amount of air that comes with each sample. You don't get the same amount of air with each one, so you are going to have a little difference in the test result for each one. For [Hoppe] to extrapolate that and say that means he's under .10 is ridiculous, so don't bite that—don't buy that.

While arguing that Hoppe should have known his driving privileges in Minnesota were revoked, the prosecutor told the jury:

> [H]e's been revoked [in Minnesota] since 1987. In Montana he's been revoked since '92, when he went out there and got a license and now he wants to come back here in Minnesota and he says that

he told this clerk, well, I am revoked in Montana. I forgot about being revoked in Minnesota so please take my eighteen fifty and give me a driver's license, and now he can walk out the door and how he's legally able to drive? I hope not. So again you are being snowed and I really hope you don't let that happen to you.

■ It is improper to disparage the defense in closing arguments. *State v. Griese*, 565 N.W.2d 419, 427 (Minn.1997). The prosecutor committed misconduct by disparaging the defense via his reference to the defense's argument as "ridiculous" and telling the jury not to be "snowed" by the defense.

■ Evidence of prosecutorial misconduct, however, does not automatically necessitate a new trial. *Porter*, 526 N.W.2d at 365. The reviewing court "must still determine whether the defendant was denied a fair trial." *Id.* (citation omitted). A new trial is warranted if the court cannot determine "with certainty that the misconduct was harmless beyond a reasonable doubt ." *Id.* (citations omitted).

■ A prosecutor is a minister of justice who may not seek a conviction at any price. *Salitros*, 499 N.W.2d at 817. Instead of confining the closing argument to the facts in evidence, the prosecutor ignored his role as a minister of justice and implied that Hoppe's previous convictions demonstrated a propensity to commit the charged crime. The prosecutor propelled the jury to find Hoppe guilty by suggesting that a conviction was needed to protect society and the jury's loved ones. The prosecutor then went further and implied that the only way to stop Hoppe's behavior was to find him guilty. As if that was not enough, the prosecutor suggested

that Hoppe was snowing the jury and that Hoppe's defense was ridiculous.

The state's closing argument, taken in its totality, far exceeded the bounds of an ethical professional summation. The prosecutor had good evidence against Hoppe and did not have to stoop to such tactics to obtain a guilty verdict. As the supreme court noted over ten years ago, repeated warnings to the prosecution against employing improper trial tactics "appear to have been to no avail." *State v. Merrill,* 428 N.W.2d 361, 373 (Minn.1988). "The prosecution can expect a reversal if such tactics are used again." *Id.* If the state wants to try this case twice, it now has the chance.

We conclude the prosecutor's comments were not harmless beyond a reasonable doubt and denied Hoppe the right to a fair trial.

**II. Certified Record**

 Hoppe asserts that the district court committed plain error in admitting Hoppe's entire Minnesota driving record because the record contained impaired-driving convictions from 1987. This issue is now moot because we are granting Hoppe a new trial based on the state's prosecutorial misconduct. Because it is one capable of repetition, however, we will comment on it.

One of the charges against Hoppe was gross misdemeanor driving under the influence of alcohol based on the state's belief that Hoppe's Minnesota driver's license was revoked. *See* Minn.Stat. § 169.129, subd. 1 (Supp.1999) (defining aggravated driving under the influence). Because Hoppe argued that he reasonably believed his license was not revoked, the state was required to prove this element of the charged crime. To do so, the state offered a certified copy of Hoppe's Minnesota driving record. Hoppe argues that

the district court committed plain error in admitting Hoppe's entire Minnesota driving record because the record contained impaired-driving convictions from 1987. Hoppe asserts that the two convictions were irrelevant and affected his right to a fair trial because the jury learned of his 13 year history of impaired-driving convictions.

 At no time did Hoppe object to the admission of the driving record. Absent specific and clear objections raised before the district court, a reviewing court "will generally not consider issues of the admissibility of evidence raised for the first time on appeal." *State v. Tovar,* 605 N.W.2d 717, 726 (Minn.2000) (citation omitted). An exception to this rule exists if Hoppe can show that admission of the evidence was plain error. *See State v. Bauer,* 598 N.W.2d 352, 363 (Minn.1999). To establish plain error Hoppe must show (1) there was error, (2) that it was plain, and (3) the error affected appellant's substantial rights. *See id.* Under a plain error analysis, Hoppe has a "heavy burden of showing that the error was prejudicial and affected the outcome of the case." *See id.* at 364 (quotation omitted).

We note that, although the 1987 convictions are listed in Hoppe's Minnesota driving record, it is speculative to assume that this knowledge substantially prejudiced Hoppe's jury. Already in evidence, Hoppe's certified driving record from Montana indicated more than two previous impaired-driving convictions the jury could rely on to find Hoppe guilty of the charged crimes. Also, the jury was instructed that in order to find Hoppe guilty, Hoppe must have two or more impaired-driving convictions within ten years. Because of the evidence against Hoppe and the district court's jury instructions, the district court's admission of Hoppe's entire Minne-

sota driving record was not plain error. The district court could have, in chambers, with the assistance of both counsel, redacted any part of Hoppe's Minnesota driving record found to be irrelevant. That the court did not do so does not change our analysis.

Hoppe may consider stipulating to this fact for the second trial because the record is clear that Hoppe's Minnesota driver's license was revoked at the time of the incident. If he insists on challenging this issue again, the district court may wish to redact Hoppe's stale convictions to avoid giving Hoppe the chance to appeal this issue a second time.

## DECISION

The prosecutor's statements during closing argument implying that Hoppe's previous convictions demonstrate a propensity to commit the charged crime, suggesting that Hoppe will continue to drink and drive unless convicted, implying that a conviction is necessary to protect society, disparaging the defense by stating that Hoppe's argument was ridiculous, and warning the jury not to be snowed by the defense constitute serious misconduct. The prosecutor's misconduct denied Hoppe the right to a fair trial.

**Reversed and remanded.**

LANSING, Judge (dissenting).

I respectfully dissent. Walter Hoppe pleaded not guilty to three gross misdemeanor charges: driving under the influence of alcohol within ten years of the first of two or more prior impaired-driving convictions, driving with a blood-alcohol concentration in excess of .10 within ten years of the first of two or more prior impaired-driving convictions, and driving under the influence before his driver's license had been reinstated following its revocation for driving while under the influence of alcohol.

In order to prove that Hoppe was guilty of the gross misdemeanor charges, the state had to prove two or more prior impaired-driving convictions within 10 years of the current charges and that his license was revoked for driving while under the influence. *See* Minn.Stat. § 169.121, subd. 3(c), .129, subd. 1 (Supp.1999) (defining enhanced gross misdemeanor). Hoppe refused to stipulate to the requisite prior convictions, or that his license was revoked, and the state offered Hoppe's certified driving record to prove the necessary elements of the offenses.

*Hoppe's* defense was that he did not remember whether his Minnesota license was reinstated, that he had a copy of a license application for which he had paid a fee, and that he believed that he was therefore licensed to drive in Minnesota. In summation and rebuttal summation, the prosecutor attempted to persuade the jury that the defense was not credible. The argument was not a model prosecution argument. But even assuming that the majority correctly characterizes the statements as prosecutorial misconduct, the facts do not warrant a new trial.

A defendant is not entitled to a new trial when it can be said with certainty that prosecutorial misconduct is harmless beyond a reasonable doubt. *State v. Porter,* 526 N.W.2d 359, 365 (Minn.1995). When applying the harmless error test, a reviewing court looks to the basis on which the jury rested its verdict and determines what effect the statements had on the verdict. *State v. Ashby,* 567 N.W.2d 21, 28 (Minn.1997). If the verdict is surely unattributable to the misconduct, the error is harmless beyond a reasonable doubt. *Id.* To evaluate the possible effect of misconduct, the court also looks to evidence supporting the defendant's theory, the length

of jury deliberations, and whether the defendant objected to the conduct or sought a curative instruction. *See State v. Griese,* 565 N.W.2d 419, 428 (Minn.1997); *Porter,* 526 N.W.2d at 359.

The evidence against Hoppe was overwhelming. The arresting officer observed Hoppe's vehicle weave within the lane several times and touch the right fog line. After stopping Hoppe's vehicle and speaking with him, the officer immediately noticed the smell of alcohol. He also observed that Hoppe's eyes were bloodshot and glassy and that his speech was slow and slurred. After Hoppe got out of his car the officer observed that Hoppe was swaying. Hoppe failed three field sobriety tests, which included the one-legged standing test, the walk-and-turn test, and the horizontal Nystagmus test. Approximately one hour after Hoppe was stopped, he took two intoxilyzer breath tests. The first one indicated Hoppe's blood alcohol-content was .163. The second test, administered four minutes later, produced a reading of .165.

Hoppe offered little evidence to refute the state's affirmative proof. He testified that he consumed four cans and one glass of beer. His drinking companion testified similarly. He suggested that he failed the field sobriety tests because of physical limitations. He conjectured that the intoxilyzer test results were the product of a faulty machine or an inexperienced test administrator. His attorney suggested to the jury that a .16 result from the breath test one hour after his arrest could mean that he was less than .10 at the time of his arrest, but no evidence supported this argument. Although his attorney made objections, many of which were sustained, the attorney made no objections to the prosecutor's comments that are challenged on appeal. His attorney sought no curative instruction. The jury reached a guilty

verdict on all three charges 80 minutes after it began deliberations.

The district court is in the best position to evaluate the effect of an unprofessional closing argument. *Ashby,* 567 N.W.2d at 27. The district court denied the new trial and that decision should stand. The prosecutor's argument was at best inartful and at worst misconduct. But on this record, Hoppe's convictions were surely unattributable to the prosecutor's inappropriate statements in summation, and I would affirm.