STATE of Minnesota, Respondent

v.

William LEHMAN, Appellant.

No. A06–1912.

Court of Appeals of Minnesota.

May 13, 2008.

Lori Swanson, Attorney General, John B. Galus, Assistant Attorney General, St. Paul, MN; and Melanie S. Ford, St. Louis County Attorney, Duluth, MN, for respondent.

Mark D. Nyvold, St. Paul, MN, for appellant.

Considered and decided by MINGE, Presiding Judge; KALITOWSKI, Judge; and CONNOLLY, Judge.

## OPINION

CONNOLLY, Judge.

Appellant attacked and beat his attorney in open court while on trial for felony assault after the district court denied his requests to discharge his public defender and declare a mistrial. The district court determined that, because of the assault, appellant had forfeited his right to court-appointed counsel. The district court further ordered that appellant would appear shackled for the remainder of the trial. Appellant argues that his due-process rights were violated because he was not provided with an evidentiary hearing before the district court's determination that he had forfeited his right to counsel. He also contends that his due-process rights were violated when he was not present at the hearing in which the district court decided that he would be shackled for the remainder of the jury trial. Appellant further argues that forcing him to wear jail clothes for the remainder of the jury trial also violated procedural due process and that the prosecutor engaged in misconduct by mentioning appellant's attack on his attorney during closing argument. We affirm.

## FACTS

Appellant William Lehman was charged with four counts of second-degree assault, two counts of third-degree assault, and one count of terroristic threats. The complaint alleged that appellant assaulted two men with a knife and inflicted substantial bodily harm on both. In addition, the complaint charged that appellant qualified as a dangerous offender who had committed a third violent felony within the meaning of Minn.Stat. § 609.1095 (2004).

Mark Groettum, a public defender, was appointed to represent appellant. After the state had rested its case in appellant's jury trial, appellant personally addressed the district court and requested a mistrial. Appellant also requested that a different public defender be appointed to represent him. The district court denied both the motion and his request. When the district court reconvened the jury trial, appellant attacked Groettum by wrapping his arm around Groettum's neck and punching him repeatedly in the face. During the assault, a chair was tipped over, and appellant and his attorney were both on the courtroom floor. As a result of the assault, Groettum bled profusely from his face and nose. He also suffered a cut lip and a black eye. Blood was all over Groettum, the counsel table, and the floor of the courtroom. Deputies and other court personnel intervened and restrained appellant, who was then removed from the courtroom. The jury was immediately led out of the courtroom, and proceedings were adjourned. The district court reconvened four hours later without the jury or appellant but with Groettum and the prosecutor present. The district court stated on the record:

> [T]he actions of the defendant were intended to be disruptive and manipulative of the court process, to seek a mistrial of the court proceedings by engaging in assaultive and violent behavior in the jury's presence by intentionally physically assaulting his own lawyer, and ... the acts of the defendant were a design

on his part to attempt to manipulate the Court process.

The district court further concluded that appellant would remain shackled for the remainder of the trial. The court specifically considered and rejected the use of a stun belt and leg restraints as insufficient to protect the people in the courtroom. The district court held that a stun belt would not be sufficient for security purposes because of the time it would take for a deputy to observe the circumstances and then activate the belt. The district court further observed that leg restraints alone would be insufficient because they would not control appellant's hands, which appellant had earlier used to attack his lawyer. The district court held that the "least reasonable restrictive measure" was to have appellant shackled in the courtroom at all times in the presence of the jury. The district court stated that it would give a cautionary instruction to the jury concerning the shackling. The court also determined that it would be acceptable for appellant to appear at trial in jail attire if law-enforcement officials believed that appellant's clothing needed to be confiscated as evidence.

After making its finding, the court took a short recess and reconvened 30 minutes later with appellant present in the courtroom. The state asked that appellant be held in contempt. The district court asked appellant if he wished for Groettum to continue as his lawyer. He answered in the negative, but stated that he was not capable of representing himself. Groettum stated that he ethically could not continue to represent appellant. The district court concluded that appellant had forfeited his right to be represented by court-appointed counsel. The district court officially excused Groettum from representing appellant. It also determined that appellant would wear jail clothes because his blood-stained clothing might be evidence of a crime. The district court noted that the appellant would not be prejudiced because the jury had seen him taken into custody after the assault. Thereafter, the trial proceeded with appellant, shackled and in jail clothes, appearing pro se against his wishes.

The district court gave three cautionary instructions. First, it advised the jury that Groettum had been discharged by the court, that the jury should not consider the fact that he was no longer there, and that the decision to discharge counsel had no bearing on appellant's guilt or innocence. Second, the district court instructed the jury not to concern itself with the reasons why appellant was wearing different clothing and that the jury should not consider the fact that he was in different clothing in determining guilt or innocence. Finally, the district court gave a similar cautionary instruction concerning appellant being shackled.

The jury returned its verdict finding appellant guilty on all counts. This appeal follows.

## ISSUES

I.  Did the district court abuse its discretion by determining, without a separate hearing, that appellant had forfeited his right to counsel by attacking his attorney in front of the jury?

II.  Did the district court abuse its discretion by concluding that appellant would wear shackles for the remainder of the trial?

III.  Was it harmless error for the district court to order that appellant wear jail clothing for the remainder of the trial?

IV.  Was it harmless error to exclude appellant from the hearing when it

was determined that he would be shackled and wear jail clothing for the remainder of the trial?

V. Did the prosecutor commit misconduct in his closing argument by referring to appellant's attack on his attorney?

## ANALYSIS

**I. Did the district court abuse its discretion by determining that appellant had forfeited his right to counsel by attacking his attorney in front of the jury?**

Appellant contends that his Fourteenth Amendment due-process rights were violated because his attorney was discharged without a hearing in appellant's presence in which he could participate. He argues that this error necessitates reversal and a new trial. Respondent argues that appellant forfeited his right to an attorney, and it was not necessary to have a separate evidentiary hearing with his participation.

"The Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process." *Iowa v. Tovar*, 541 U.S. 77, 80–81, 124 S.Ct. 1379, 1383, 158 L.Ed.2d 209 (2004) (citing *Maine v. Moulton*, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)). That right is made obligatory on the states through the Fourteenth Amendment. *Gideon v. Wainwright*, 372 U.S. 335, 342, 83 S.Ct. 792, 795, 9 L.Ed.2d 799 (1963). Whether that right can be forfeited appears to be an issue of first impression in Minnesota. But various federal and state courts have considered the issue and determined that the right to counsel can be summarily forfeited for extremely serious misconduct similar to that which occurred here. *See Wilkerson v. Klem*, 412 F.3d 449, 455 (3d Cir.2005) (stating that a defendant forfeits his Sixth Amendment right to counsel by engaging in extremely serious misconduct); *United States v. Thompson*, 335 F.3d 782, 785 (8th Cir.2003) (criminal defendant's threat to kill his appellate counsel justified permitting counsel to withdraw and the refusal to appoint substitute counsel), *cert. denied*, 540 U.S. 1134, 124 S.Ct. 1111, 157 L.Ed.2d 940 (2004); *Gilchrist v. O'Keefe*, 260 F.3d 87, 92–100 (2d Cir.2001) (ruling that habeas petitioner had not been unconstitutionally deprived of counsel during a sentencing proceeding based on a state court finding of forfeiture because the petitioner punched his counsel in the head); *United States v. Leggett*, 162 F.3d 237, 250–51 (3d Cir.1998) (holding that a defendant's unprovoked physical battery of his attorney at a hearing qualifies as the sort of "extremely serious misconduct" that amounts to the forfeiture of the right to counsel), *cert. denied*, 528 U.S. 868, 120 S.Ct. 167, 145 L.Ed.2d 141 (1999); *United States v. McLeod*, 53 F.3d 322, 325–26 (11th Cir.1995) (holding that defendant forfeited his right to counsel by verbally abusing and threatening to harm his attorney, threatening to sue him, and attempting to persuade him to engage in unethical conduct); *United States v. Jennings*, 855 F.Supp. 1427, 1443–45 (M.D.Pa. 1994) (ruling that indigent defendant who physically assaulted his court-appointed counsel without provocation or justification waived his right to appointed counsel and requiring defendant to proceed pro se), *aff'd without opinion*, 61 F.3d 897 (3d Cir.1995); *Bultron v. State*, 897 A.2d 758, 762–66 (Del.2006) (holding that defendant's continuing profanity and insulting conduct directed toward his court-appointed counsel was intended to force his attorney to withdraw and to prevent his trial from going forward after the trial court had denied his request for substitute coun-

sel and amounted to forfeiture of the defendant's right to counsel); *People v. Sloan,* 262 A.D.2d 431, 693 N.Y.S.2d 52, 53 (1999) (holding that the defendant forfeited his right to counsel by a pattern of threatening, abusive, obstructive, and uncooperative behavior toward four successive attorneys); *People v. Gilchrist,* 239 A.D.2d 306, 658 N.Y.S.2d 269 (1997) (ruling that defendant forfeited his right to counsel by physically assaulting his attorney and requiring defendant to represent himself), *appeal denied,* 91 N.Y.2d 834, 667 N.Y.S.2d 688, 690 N.E.2d 497 (1997); *Commonwealth v. Thomas,* 879 A.2d 246, 258–59 (Pa.Super.Ct.2005) (holding that a criminal defendant forfeited his right to counsel through a pattern of serious misconduct, abuse, and threats); *State v. Carruthers,* 35 S.W.3d 516, 548–50 (Tenn. 2000) (recognizing that an indigent defendant may forfeit the right to counsel by using that right to manipulate, delay, or disrupt proceedings and holding that a particular indigent defendant forfeited his right to appointed counsel by verbally attacking and threatening his last appointed counsel as well as counsel's office staff and family members).

■ We conclude that the district court did not abuse its discretion by determining that appellant had forfeited his right to an attorney by attacking his public defender in open court.[1] No court can carry on its business in an atmosphere of violence, fear, and intimidation. As reflected in the opinions cited, the most appropriate response to the type of cynical manipulation of the right to counsel engaged in by appellant is to refuse to allow the manipulation, in the sense that the defendant should not be provided with the advantage sought. Violence in the courtroom cannot be tolerated and when that violence is a part of a manipulation of the right to appointed counsel it is appropriate to deprive the defendant of that right. We are aware that forfeiting a defendant's right to court-appointed counsel is an extreme sanction. But the outrageous and manipulative conduct of appellant in this instance justified the district court's decision. Moreover, the district court's action is the most effective means of deterring repetition of such conduct by appellant and others similarly situated.

■ The next issue is whether the district court erred in deciding that appellant had forfeited his right to court-appointed counsel without first conducting an evidentiary hearing in appellant's presence. The denial of due process is a question of law reviewed de novo by this court. *Comm'r of Natural Res. v. Nicollet County Pub. Water/Wetlands Hearings Unit,* 633 N.W.2d 25, 29 (Minn.App.2001), *review denied* (Minn. Nov. 13, 2001).

■ Generally, an evidentiary hearing is required in order for the court to determine whether the alleged misconduct compelling forfeiture of counsel actually occurred. In contrast, when the misconduct giving rise to the forfeiture occurs in the presence of the district court, the forfeiture ruling need not be preceded by such a hearing. This situation is similar to a judicial finding of criminal contempt. An evidentiary hearing is not required when the contemptuous act occurs in front of the judge. *See In re Welfare of E.J.B.,* 466 N.W.2d 768, 770 (Minn.App.1991) (stating that direct contempt, which occurs in the presence of the court, can be punished

1. This court will evaluate whether forfeiture of court-appointed counsel was warranted under an abuse-of-discretion standard of review. The district court is closer to the event or events leading to a declaration of forfeiture, and this court will not overturn that determination absent an abuse of discretion.

summarily, whereas constructive contempt, of which the court has no personal knowledge, requires procedural safeguards); Minn.Stat. § 588.03 (2006) ("A direct contempt may be punished summarily, for which an order shall be made reciting the facts as occurring in the immediate view and presence of the court or officer, and adjudging the person proceeded against to be guilty of a contempt. . . ."). In this case, no separate hearing was necessary because appellant's physical assault on his attorney occurred in full view of the district court. *See Leggett,* 162 F.3d at 250 (stating that an evidentiary hearing was not necessary when the defendant attacked his attorney in full view of the district court). The *Leggett* court determined that an evidentiary hearing was not required because the assault was a direct presentation of evidence before the district court. *Id.* at 250.

Moreover, even though no separate hearing occurred, appellant did have an opportunity to be heard, albeit belatedly. The district court did not make a decision about the forfeiture of counsel until appellant was brought back into the courtroom at 1:53 p.m. At that point, he was allowed to speak. Appellant stated that he no longer wanted to be represented by Groettum, but he did not believe that he was capable of representing himself. He also apologized to the court. Appellant was able to speak again a few moments later when he questioned the cases cited by the court supporting forfeiture of counsel:

> THE DEFENDANT: Well, after what you have read, it seems to me most of them cases require repeated disruptions. That's one disruption.
>
> THE COURT: I understand your position, and the one disruption was sufficient to cause the forfeiture based upon the vicious attack that you chose to en-

gage in here against your attorney this morning.

> THE DEFENDANT: Aren't we assuming guilt there? Don't I have a right to a trial on that attack?
>
> THE COURT: Ultimately you will if there is charges filed, but you did commit the offense in the presence of the Court. . . .

The district court heard appellant's argument and rejected it.

We therefore hold that the district court did not abuse its discretion by finding that appellant had forfeited his right to court-appointed counsel by physically assaulting his attorney. Furthermore, the district court did not violate appellant's right to due process by failing to hold a separate evidentiary hearing because the attack occurred in the presence of the district court.

## II. Did the district court abuse its discretion by concluding that appellant would wear shackles for the remainder of the trial?

■ Appellant argues that the district court abused its discretion by ordering him to wear shackles for the remainder of the trial. Respondent asserts that, under the circumstances, it was within the district court's discretion to have appellant shackled.

The Minnesota Rules of Criminal Procedure explicitly address the issue of shackling an individual while on trial. The pertinent rule provides:

> Defendants and witnesses shall not be subjected to physical restraint while in court unless the trial judge has found such restraint reasonably necessary to maintain order or security. A trial judge who orders such restraint, shall state the reasons on the record outside the presence of the jury. Whenever physical restraint of a defendant or wit-

ness occurs in the presence of jurors trying the case, the judge shall on request of the defendant instruct those jurors that such restraint is not to be considered in assessing the proof and determining guilt.

Minn. R.Crim. P. 26.03, subd. 2(c).

▬ Furthermore, "(1) restraints should not be ordered unless eminently necessary, and (2) once this necessity has been shown, only those restraints which are reasonable and least coercive under the circumstances should be imposed." *State v. Stewart,* 276 N.W.2d 51, 61 (Minn.1979). This court reviews the district court's decision to shackle a defendant for an abuse of discretion. *State v. Chambers,* 589 N.W.2d 466, 475 (Minn.1999).

▬ Minnesota caselaw dealing with this issue has concluded that "[a] trial court need not wait for a defendant to cause disruptions to require restraints...." *Id.* The Minnesota Supreme Court has listed several factors to consider including the seriousness of the charge, the defendant's past record,[2] the defendant's temperament and character, his age and physical attributes, threats made by the defendant to cause a disturbance, the size of the audience, the nature and security of the courtroom and any less-restrictive means. *Stewart,* 276 N.W.2d at 62 n. 5.

In this case, appellant actually attacked his attorney in open court, in front of the judge and jury, punching him several times in the face and drawing a great deal of blood. Appellant demonstrated that he was dangerous and needed to be restrained. The district court found, based on appellant's conduct in the courtroom, that shackling was necessary. It provided its reasons on the record. The court discussed several cases addressing this issue, evidencing its awareness that the decision to shackle should be one of last resort. Lastly, the district court evaluated less-restrictive means and rejected them as ineffective.[3] The district court did not abuse its discretion by ordering appellant restrained for the remainder of the trial in an effort to protect court officers, attorneys, and the jury.

## III. Did the district court err when it required appellant to wear jail clothing for the remainder of the trial?

Appellant argues that the district court committed reversible error by requiring him to appear at trial in jail-issued clothing. Respondent asserts that any error was harmless.

The Minnesota Rules of Criminal Procedure state that "[a]n incarcerated defendant or witness shall not appear in court in the distinctive attire of a prisoner." Minn. R.Crim. P. 26.03, subd. 2(b). Furthermore, "there is a due process violation if the State denies an accused's objection to being tried in such garb ... and ... there is no relevant constitutional difference concerning that due process right if the accused has not objected to the practice." *Estelle v. Williams,* 425 U.S. 501, 517, 96 S.Ct. 1691, 1699, 48 L.Ed.2d 126 (1976). In conclusion, requiring a defendant to

---

2. There is another case involving leg restraints and this appellant. The Minnesota Supreme Court concluded in *State v. Lehman,* 511 N.W.2d 1, 3 (Minn.1994), that based on his past actions, including an escape from custody, appellant had not shown that the use of leg restraints was unjustified.

3. The district court concluded that a stun belt alone would not be effective because the operator may not be able to act quickly enough to protect those in the courtroom. It also determined that leg restraints would not be sufficient as appellant had already shown the damage that could be inflicted by his hands.

wear jail clothes in open court is a due-process violation. "However, a finding of constitutional error in a criminal trial does not require a new trial if the state can show beyond a reasonable doubt that the error was harmless." *State v. Jones*, 556 N.W.2d 903, 910 (Minn.1996). "If the verdict actually rendered was surely unattributable to the error, the error is harmless beyond a reasonable doubt." *Id.*

In this case, the district court apparently determined that because appellant's blood-stained clothes could contain evidence of his assault, he could not wear them. But we do not believe it necessarily follows that appellant should have been required to wear jail clothes for the rest of the trial. He could have been provided with different civilian clothing. But we conclude that any such error was harmless beyond a reasonable doubt. The rationale behind the rule is so that a jury does not know a defendant is in custody, which might influence their deliberations. Here, appellant attacked his attorney in open court, in front of the jurors. After the assault, they witnessed appellant being taken into custody. Therefore, there would have been no illusion, in or out of jail clothes, that appellant was not in custody for the remainder of the trial. Moreover, the district court gave an explicit instruction to the jury that they were not to consider the fact that appellant was wearing court-issued clothing. *See State v. Budreau*, 641 N.W.2d 919, 926 (Minn. 2002) ("[W]e presume that the jury followed the instructions as given.").

**IV. Did the district court err by excluding appellant from the hearing in which it was determined that he would be shackled and wear jail clothing for the remainder of the trial?**

Appellant argues the district court erred by not allowing him the opportunity to appear at the hearing to contest being shackled and forced to wear jail clothing. He believes this was plain error that prejudiced him and necessitates a retrial. Respondent asserts that it was not error to exclude appellant from the hearing, and any error that did occur in that regard was harmless. The rule provides: "The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by these rules." Minn. R.Crim. P. 26.03, subd. 1(1). This is a question of law, which this court reviews de novo. *Ford v. State*, 690 N.W.2d 706, 712 (Minn.2005).

This hearing was a stage of the trial at which appellant had the right to be present. That right, however, may be forfeited under certain circumstances. *State v. Ware*, 498 N.W.2d 454, 457 (Minn.1993). "Furthermore, even if a defendant is wrongly denied the right to be present, the defendant is not entitled to relief if it can be said that the error was harmless error beyond a reasonable doubt." *Id* at 457–58.

Assuming that the district court erred by not allowing appellant to attend the hearing, some relief is proper unless such error was harmless beyond a reasonable doubt. *Id.* at 457. We conclude that this was harmless error. First, appellant was given a chance to speak after the attorneys and judge had met without him for approximately 30 minutes. At that time, appellant addressed the judge directly, apologized for his earlier conduct, and stated that he did not know what happened, that he "just snapped," and that his assault upon his attorney was not intentional. The district court rejected these arguments and persisted in its decision to have him shackled and in jail clothes for

the remainder of the trial. Second, as previously stated, there was no need for a separate evidentiary hearing because the conduct giving rise to the hearing occurred in the district court's presence. Lastly, the district court articulated very clearly the reasons for the shackling and jail clothes and rejected any alternatives to shackling after deliberations over the course of four hours between the attack and the hearing. Any error that occurred in barring appellant from the hearing for the first 30 minutes was harmless beyond a reasonable doubt.

## V. Did the prosecutor commit misconduct in his closing argument by referring to appellant's attack on his attorney?

Appellant argues that the prosecutor committed serious misconduct on two occasions in his closing argument when he said the following:

> Who is the one who showed the temper on that night? And sadly enough, ladies and gentlemen, you have had a firsthand experience with the defendant's temper. You have seen it firsthand. Now, you have seen his temper how he acts here in the courtroom, a place where you would like to feel there is a certain amount of decorum, a certain amount of respect. You have seen his temper show up when he is sober. Now ask yourself what was his temper like that night when he is drunk? What would it have been like back then on that night when he is out and about, doesn't necessarily have to worry about it happening in a courtroom full of people, and he is actually intoxicated?

> Now, the defendant makes a great issue of the fact that some of the details from different witnesses, perhaps they remember differently, but keep in mind again it is seven months ago. But I'll

give you a classic example, ladies and gentleman, of memory. You saw an assault occur here yesterday. You saw the defendant assault Mr. Groettum. I would ask yourself when you go back into the jury room whether every one of you is going to remember all the details the same. How many of the chairs were knocked over? Where was the blood? Which of the deputies came in to assist? Now, it was all right in front of you. Are you all going to remember each and every one of those details, though, and remember them all perfectly? No. But you know there is one thing you are going to remember and that is the defendant assaulting Mr. Groettum.

■■■■■■ Prosecutorial misconduct can occur when the prosecutor argues facts not in evidence. *State v. Steward*, 645 N.W.2d 115, 122 (Minn.2002). It can also occur when inadmissible evidence is referred to in an effort to have jurors draw inferences from it, *State v. Mayhorn*, 720 N.W.2d 776, 788–89 (Minn.2006), or when the prosecutor argues that the defendant had a propensity to commit the charged crimes. *State v. Hoppe*, 641 N.W.2d 315, 319 (Minn.App.2002), *review denied* (Minn. May 14, 2002). Misconduct can also occur when the prosecutor acts to inflame the jury's prejudices and passions. *Id.* Generally, a party must object to these instances of misconduct at trial or forfeit these arguments on appeal. *State v. Powers*, 654 N.W.2d 667, 678 (Minn.2003) (citing *State v. Sanders*, 598 N.W.2d 650, 656 (Minn.1999)). In this case, appellant did not object at trial.

■■■■■■ The general rule that a party must object to alleged prosecutorial misconduct or waive the issue on appeal does not apply to a criminal defendant appearing pro se. *State v. Reed*, 398 N.W.2d 614, 617 (Minn.App.1986) (citing *State v. Stufflebean*, 329 N.W.2d 314, 318 (Minn.1983)),

**87**

*review denied* (Minn. Feb. 13, 1987). Therefore, the unobjected-to alleged prosecutorial misconduct is analyzed under a plain-error standard. *State v. Ramey*, 721 N.W.2d 294, 299 (Minn.2006). Plain-error analysis requires "(1) error; (2) that is plain; and (3) the error must affect substantial rights. If these three prongs are met, the appellate court then assesses whether it should address the error to ensure fairness and the integrity of the judicial proceedings." *State v. Griller*, 583 N.W.2d 736, 740 (Minn.1998) (citing *Johnson v. United States*, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997)).

▆▆▆ The prosecutor did not engage in misconduct in his first statement. This assault occurred in open court in front of the jury, and appellant referred to the attack in his own direct examination by apologizing to the jury. Furthermore, the district court refused to instruct the jury to disregard the assault, but did instruct them that they were able to take the witnesses' manner into account. Therefore, the prosecutor did not refer to inadmissible evidence. Nor did he imply that appellant had the propensity to commit the crime because of the assault in open court. Rather, he was merely drawing attention to the fact that appellant had a temper when sober and that it seemed likely he would have a temper when drunk. He did not say that it was more likely that appellant committed the underlying offense because he had assaulted his lawyer.

▆▆▆ The prosecutor did not engage in misconduct in his second statement. In this situation, the prosecutor was not inflaming the passions or prejudices of the jury, but rather giving them a concrete example of something they had all witnessed and would recollect differently. This reference was not an end, in and of itself, but rather a means to an end. The prosecutor was attempting to make a larger point and used this convenient reference to do it. The record does not support appellant's contention that this is misconduct.

▆▆▆ Even assuming that these statements were prosecutorial misconduct, they were not prejudicial and would not necessitate a retrial. First, the jury had actually witnessed the assault on the day before closing arguments. There is little doubt that it was present in their minds. It is extremely unlikely that the prosecutor's reference brought the attack to the forefront of their thoughts or changed their opinion of appellant. Thus, the statements were not prejudicial to appellant and were harmless overall. Furthermore, these two statements were taken out of a much longer closing argument, and it is unlikely that these comments had a substantial impact on the jury. *State v. Glaze*, 452 N.W.2d 655, 662 (Minn.1990) (finding no prejudice to defendant when the remarks are isolated and not representative of closing argument in its entirety); *See State v. Daniels*, 332 N.W.2d 172, 180 (Minn.1983) (stating that the prosecutor's argument must be evaluated as a whole, without solitary comments being taken out of context). The majority of the closing was devoted to an analysis of the evidence, which, giving the jury the benefit of the doubt, was the basis for their verdict.

## DECISION

Because appellant attacked his attorney in its presence, the district court did not abuse its discretion in concluding that appellant forfeited his right to court-appointed counsel or that he would remain shackled for the remainder of the trial. Because the assault occurred in its presence, it was not necessary for the district court to conduct a separate evidentiary hearing. It was harmless error to have appellant appear in jail clothes and to ex-

clude him from the hearing in which that decision was made. The state did not engage in prosecutorial misconduct when it referred to the attack in its closing argument.

**Affirmed.**