*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A25-0647**

Edward Lee Jones, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed November 3, 2025**
**Affirmed**
**Johnson, Judge**

Ramsey County District Court
File No. 62-CR-22-4583

Cathryn Middlebrook, Chief Appellate Public Defender, Adam Lozeau, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Keith Ellison, Attorney General, St. Paul, Minnesota; and

John Choi, Ramsey County Attorney, Alexandra Meyer, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Considered and decided by Reyes, Presiding Judge; Worke, Judge; and Johnson, Judge.

**NONPRECEDENTIAL OPINION**

**JOHNSON**, Judge

In 2022, Edward Lee Jones was convicted of second-degree assault and possession of a firearm by an ineligible person. In 2024, Jones petitioned for postconviction relief and

alleged that he was deprived of a fair trial by prosecutorial misconduct and erroneous evidentiary rulings. The postconviction court denied the petition. We affirm.

**FACTS**

During the early evening of August 9, 2022, two men called 911 to report that another man had fired gunshots at them while they were riding their bicycles on a city street in Roseville and while they chased the shooter in a nearby parking lot. One of the callers described the shooter as a bald Black man of medium build with a beard and said that the shooter also was riding a bicycle. A police officer who responded to the call saw a man matching the 911 callers' description biking on a nearby street and stopped him. Another officer brought one of the 911 callers to that spot for a show-up. The caller identified the detained man, Jones, as the person who had shot at him with "100 percent" certainty. The officer arrested Jones immediately after the show-up.

The state charged Jones with second-degree assault, in violation of Minn. Stat. § 609.222, subd. 1 (2022), and possession of a firearm by an ineligible person, in violation of Minn. Stat. § 624.713, subd. 1(2) (2022). The case was tried to a jury on two days in October 2022. The state called six witnesses, including the two other men who were involved in the incident, who testified about Jones's conduct in the incident described above. A detective testified that Jones's bicycle's handlebars tested positive for gunshot residue. The state introduced surveillance videorecordings that captured the shootings as well as photographs of Jones immediately after his arrest, which show him wearing a light-colored backpack. A crime-scene technician testified that multiple shell casings were recovered from the street and parking lot outside the apartment, including shell casings

2

from a nine-millimeter firearm that never was recovered. Jones did not testify. The jury found him guilty of both charges. The district court imposed two concurrent sentences of 60 months of imprisonment. Jones did not pursue a direct appeal.

In December 2024, Jones petitioned for postconviction relief while represented by an assistant state public defender. He alleged that prosecutorial misconduct and erroneous evidentiary rulings deprived him of a fair trial. In April 2025, the postconviction court denied Jones's petition. The postconviction court reasoned that the prosecutor engaged in two forms of misconduct but that the misconduct did not affect Jones's substantial rights. Jones appeals and reiterates the arguments he presented to the postconviction court.

## DECISION

### I. Prosecutorial Misconduct

Jones first argues that the postconviction court erred by denying his petition on the ground that the prosecutor engaged in misconduct that entitles him to a new trial.

The right to due process includes the right to a fair trial. *State v. Duol*, 25 N.W.3d 135, 141 (Minn. 2025). "Prosecutors have an affirmative obligation to ensure that a defendant receives a fair trial." *State v. Jones*, 753 N.W.2d 677, 686 (Minn. 2008) (quotation omitted). Consequently, prosecutorial misconduct may result in the denial of a fair trial. *State v. Ramey*, 721 N.W.2d 294, 300 (Minn. 2006). "A prosecutor engages in prosecutorial misconduct when he violates clear or established standards of conduct, *e.g.*, rules, laws, orders by a district court, or clear commands in this state's case law." *State v. McCray*, 753 N.W.2d 746, 751 (Minn. 2008) (quotation omitted).

Jones concedes that he did not object at trial to the misconduct that he challenges in this postconviction action. Accordingly, we apply a modified plain-error test. *State v. Carridine*, 812 N.W.2d 130, 146 (Minn. 2012). To prevail under the modified plain-error test, an appellant first must establish that an error occurred. *Ramey*, 721 N.W.2d at 302. The appellant then must show that the error was plain. *Id.* "An error is plain if it was clear or obvious." *Id.* (quotations omitted). At the third step of the modified plain-error analysis, the burden shifts to the state to show "that there is no reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict of the jury." *Id.* (quotations omitted). If the state does not satisfy that burden, the appellate court proceeds to the fourth step to determine whether the plain misconduct should result in a new trial to ensure the "fairness, integrity, or public reputation of judicial proceedings." *Pulczinski v. State*, 972 N.W.2d 347, 356 (Minn. 2022).

In reviewing a postconviction court's denial of a petition, this court applies a clear-error standard of review to the postconviction court's factual findings, a *de novo* standard of review to its legal conclusions, and an abuse-of-discretion standard of review to its ultimate decision to deny relief. *Sanchez v. State*, 890 N.W.2d 716, 719-20 (Minn. 2017).

## A. Whether Plain Misconduct Occurred

Jones contends that the prosecutor engaged in three types of prosecutorial misconduct. We will separately consider the three allegations.

### 1. Right to Remain Silent

Jones contends that the prosecutor engaged in misconduct by eliciting testimony that he exercised his right to remain silent. Jones refers to the prosecutor's direct

4

examination of the officer who responded to the 911 call and the detective who investigated Jones. The officer testified that he "tried to read [Jones] his *Miranda* rights" but that Jones "didn't want to talk to me about everything or give me a fingerprint." Later the prosecutor asked the detective a question that referred to the fact that Jones "had . . . affirmed his right to not be interrogated." The detective answered by reiterating that he was "aware that [Jones] did not wish to speak to me further."

The postconviction court determined that the prosecutor engaged in plain misconduct by eliciting evidence that Jones had exercised his right to remain silent. On appeal, the state concedes that the prosecutor engaged in plain misconduct. Because it is well established that a prosecutor may not introduce evidence that a defendant exercised his right to remain silent, we agree. *See State v. Penkaty*, 708 N.W.2d 185, 199 (Minn. 2006); *State v. Clark*, 296 N.W.2d 359, 366 (Minn. 1980); *State v. McCullum*, 289 N.W.2d 89, 92 (Minn. 1979); *State v. Beck*, 183 N.W.2d 781, 784 (Minn. 1971).

### 2. *Offensive Slur*

Jones also contends that the prosecutor engaged in misconduct by eliciting testimony that he used an offensive slur to describe the investigating officers. A detective testified on direct examination that, when he and another officer attempted to obtain a DNA sample from Jones pursuant to a search warrant, Jones refused to cooperate. The prosecutor asked the detective, "Did he say anything else along with that refusal?" The detective answered by saying that Jones "referred to us as faggots."

The postconviction court determined that the prosecutor engaged in plain misconduct by eliciting testimony that Jones used an offensive slur when referring to the

5

officers.  On appeal, the state does not challenge the postconviction court's determination. Because the testimony about Jones's offensive slur has no probative value, or because its probative value is substantially outweighed by the potential for unfair prejudice, we agree. *See* Minn. R. Evid. 401, 402, 403; *see also State v. Mayhorn*, 720 N.W.2d 776, 782-83 (Minn. 2006) (concluding that defendant's "derogatory comments about the prisoners at the local jail" were not probative of whether defendant committed charged crimes).

### 3.    *Belittling the Defense*

Jones also contends that the prosecutor engaged in misconduct by belittling the defense.  Jones bases this contention on the following statements in the prosecutor's closing argument:  "Was [Jones's] clone wearing his clothes, shooting at [the men who called], who then magically vanished and Mr. Jones appeared in his place, riding the shooter's bike? . . . .  [I]t would be absurd for you to conclude anything other than the fact that Mr. Jones assaulted" the men who called 911.

A prosecutor's closing argument must be "based on the evidence produced at trial, or the reasonable inferences from that evidence."  *State v. Porter*, 526 N.W.2d 359, 363 (Minn. 1995).  "The State may argue that there is no merit in a particular defense, but it may not belittle that defense either in the abstract or by suggesting that the defendant raised the defense because it was the only one with any hope for success."  *State v. Peltier*, 874 N.W.2d 792, 804 (Minn. 2016).  A closing argument is improper if it "could only have been intended to inflame the jury's passions and prejudices."  *Porter*, 526 N.W.2d at 364.

The postconviction court determined that the prosecutor did not engage in improper belittling of the defense, reasoning that a prosecutor is allowed to argue that there is no

6

merit to a particular defense. Jones contends that the postconviction court erred on the ground that this case is like *State v. Hoppe*, 641 N.W.2d 315 (Minn. App. 2002), in which the prosecutor committed misconduct by stating that the defendant's argument was "ridiculous" and that jurors should not be "snowed" by it. *Id.* at 321. Jones also compares this case to *Porter*, in which the prosecutor attempted to impinge on juror independence by arguing that jurors would have to believe in Santa Claus in order to find the defendant not guilty, that jurors surely were "not that big of suckers," and that "there would be no sedative or salve to make them feel better" if they found the defendant not guilty. 526 N.W.2d at 363-64.

The closing argument in this case was not sufficiently similar to the closing arguments in *Hoppe* and *Porter*. The prosecutor's statement about a "clone" was a way of saying that the photograph of Jones taken immediately after his arrest was very similar to the 911 caller's description of the shooter and Jones's appearance in the surveillance videorecording. The prosecutor's use of the word "absurd" was a way of highlighting the weakness of the defense's argument. The prosecutor did not use language that inherently challenged the jurors' intelligence and judgment. Accordingly, the prosecutor did not belittle or disparage the defense.

Thus, the postconviction court did not err by determining that the prosecutor engaged in two forms of plain misconduct but did *not* engage in plain misconduct in the form of belittling or disparaging the defense.

7

**B.      Whether Plain Misconduct Affected Substantial Rights**

The third requirement of the modified plain-error test is that plain misconduct affected the defendant's substantial rights. *Ramey*, 721 N.W.2d at 302. On this issue, the state bears the burden of establishing "that there is no reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict of the jury." *Id.* (quotation omitted). To determine whether such a reasonable likelihood exists, "we consider the strength of the evidence against the defendant, the pervasiveness of the improper suggestions, and whether the defendant had an opportunity to (or made efforts to) rebut the improper suggestions." *State v. Portillo*, 998 N.W.2d 242, 251 (Minn. 2023) (quotation omitted).

The postconviction court determined that the two forms of prosecutorial misconduct did not affect Jones's substantial rights because the state presented strong evidence of his guilt. The postconviction court reasoned that the state's case was supported by the surveillance videorecording, which showed the shooter on a bicycle, with clothing and a light-colored backpack that matched Jones's clothing and light-colored backpack. The postconviction court also noted that eyewitnesses identified Jones as the shooter, that bullet casings were recovered in the street and parking lot, and that the handlebars of Jones's bicycle tested positive for gunshot residue.

Jones challenges the postconviction court's reasoning by pointing out weaknesses in the state's case. First, Jones notes that investigators did not recover DNA evidence or a firearm to link him to the shooting. Jones also asserts that the eyewitness identification by one of the 911 callers was unreliable because the men had never met Jones before the

8

incident, cross-racial identifications are unreliable, and the show-up after Jones's arrest was suggestive. Jones also notes that the two men testified that the shooter rode a black bicycle, whereas Jones's bicycle actually was blue and teal.

Jones's contentions understate the strength of the state's evidence. The videorecordings, although taken at a distance and of somewhat low quality, show a person remarkably similar to the photograph of Jones immediately after his arrest, which was taken only a few feet away and is of high quality. In addition to Jones's physical characteristics, both the shooter in the videorecordings and Jones in the post-arrest photograph were wearing a black T-shirt with a white logo on the left side of the chest, black shorts, black and white shoes, and a light-colored backpack. The videorecordings and photographs allowed the jury to see the crime for themselves and to make their own comparisons between the photograph of Jones after his arrest and his appearance in the courtroom. The state's identification of Jones as the shooter was corroborated by a 911 caller's observation of Jones at a show-up shortly after the crime as well as the courtroom testimony of both men. In addition, the state introduced bullet casings and evidence that Jones's bicycle handlebars tested positive for gunshot residue. This combination of evidence constituted strong evidence of Jones's guilt. *See State v. Davis*, 735 N.W.2d 674, 682 (Minn. 2007).

In addition, the two forms of misconduct recognized by the postconviction court were not pervasive. The evidence of Jones's invocation of his right to remain silent was mentioned only twice, and only briefly, in the prosecutor's direct examination of two police officers. The evidence of Jones's offensive slur was mentioned only once. Importantly,

9

neither Jones's invocation of his right to remain silent nor the offensive slur was mentioned in closing argument. The jury almost surely returned guilty verdicts because of the strength of the state's case, not the two isolated instances of prosecutorial misconduct. Considering the record as a whole, "there is no reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict of the jury." *See Ramey*, 721 N.W.2d at 302 (quotations omitted).

Thus, the postconviction court did not err by denying Jones relief on his claim of prosecutorial misconduct on the ground that the two established forms of misconduct did not substantially affect Jones's rights. In light of that conclusion, we need not consider whether a new trial is required to protect the fairness and integrity of judicial proceedings. *See State v. Brown*, 815 N.W.2d 609, 620 (Minn. 2012).

## II. Evidentiary Rulings

Jones also argues that the postconviction court erred by denying his petition on the ground that the district court erroneously admitted three types of inadmissible evidence.

Two types of evidence challenged by Jones are discussed above: evidence that he exercised his right to remain silent and evidence that he referred to officers with an offensive slur. Jones did not object to the admission of either type of evidence. Accordingly, we apply the plain-error test. *State v. Griller*, 583 N.W.2d 736, 740 (Minn. 1998).

The state concedes that the admission of evidence of Jones's invocation of his right to remain silent was plainly erroneous, and the state does not challenge the postconviction court's determination that admission of the offensive slur was erroneous.

The third requirement of the plain-error test requires an appellant to show that a plain error affected his substantial rights. *Id.* We have concluded above that, under the modified plain-error test, the state satisfied its burden of establishing that the prosecutorial misconduct that resulted in the admission of the same evidence did *not* substantially affect Jones's rights. *See supra* I.B. In light of that conclusion, Jones cannot satisfy his burden of showing that the admission of the same evidence affected his substantial rights.

The third type of evidence challenged by Jones is evidence that he refused to cooperate with the execution of a search warrant seeking his DNA. Jones objected to the introduction of that evidence on the ground that it lacked relevance because the state had not done any DNA testing. The district court overruled the objection. The postconviction court reasoned that the evidence was relevant to Jones's theory that the investigation was insufficiently thorough. The postconviction court also distinguished the facts of this case (which involved a search warrant) from the facts of cases in which a defendant's refusal to consent to a *warrantless* search for DNA was deemed irrelevant and, thus, inadmissible. *See State v. Larson*, 788 N.W.2d 25, 32 (Minn. 2010); *Jones*, 753 N.W.2d at 687.

On appeal, Jones does not challenge the postconviction court's reasoning that the evidence was relevant to the thoroughness of the officers' investigation. Caselaw shows that such evidence often is relevant. *See State v. Gilleylen*, 993 N.W.2d 266, 284 (Minn. 2023); *State v. Smith*, 932 N.W.2d 257, 269-70 (Minn. 2019); *State v. Tran*, 712 N.W.2d 540, 550-51 (Minn. 2006). Jones also does not challenge the postconviction court's analysis distinguishing the caselaw concerning a defendant's refusal to consent to a *warrantless* search. Rather, Jones focuses on whether the evidence is probative of

11

consciousness of guilt. The caselaw shows that evidence of consciousness of guilt may be relevant and admissible so long as its relevance is not outweighed by the potential for unfair prejudice. *See State v. McDaniel*, 777 N.W.2d 739, 746 (Minn. 2010); *Mayhorn*, 720 N.W.2d at 783. The central issue at trial was the identity of the shooter. Jones's refusal to cooperate with a valid search warrant seeking his DNA arguably tends to show his consciousness of guilt. Jones also focuses on whether the evidence, even if relevant, would be misleading. *See* Minn. R. Evid. 403. But Jones's trial attorney did not object on that ground. Thus, the district court did not abuse its discretion by admitting the evidence, and the postconviction court did not err by upholding that ruling.

Even if we were to conclude that evidence of Jones's refusal to cooperate with the taking of a DNA sample was erroneously introduced, Jones would not be entitled to a new trial because the error would be harmless. An error is harmless if no reasonable possibility exists that the error significantly affected the jury's verdict. *State v. Bigbear*, 10 N.W.3d 48, 54 (Minn. 2024). We have concluded above that the state established that prosecutorial misconduct did not substantially affect Jones's rights because the state introduced strong evidence of guilt and the prosecutorial misconduct was not pervasive. *See supra* I.B. Similarly, the evidence of Jones's refusal to cooperate with a search warrant seeking his DNA was not pervasive. The prosecutor only briefly asked the detective about his attempt to collect Jones's DNA. The prosecutor also mentioned Jones's refusal in one short statement during closing argument. But the prosecutor did so in connection with his argument that the investigating officers "were very thorough and professional" and conducted "the best search that they could." There is no reasonable likelihood that the

jury's verdict would have been different in the absence of evidence and argument about Jones's refusal to cooperate with the search warrant. For these reasons, Jones cannot show that the district court's admission of the challenged evidence substantially affected the jury's verdict.

Thus, the postconviction court did not err by denying Jones relief on his claim that the district court admitted inadmissible evidence.

Before concluding, we note that Jones has made one additional argument: that the cumulative effect of multiple errors warrants a new trial. "Cumulative error exists when the cumulative effect of the errors . . . and indiscretions, none of which alone might have been enough to tip the scales, operate to the defendant's prejudice by producing a biased jury." *Penkaty*, 708 N.W.2d at 200 (quotation omitted). In other words, if an appellant establishes that a district court committed two or more procedural errors, none of which individually requires a new trial, the appellant nonetheless may be "entitled to a new trial if the errors, when taken cumulatively, had the effect of denying appellant a fair trial." *State v. Jackson*, 714 N.W.2d 681, 698 (Minn. 2006) (quotation omitted). We have identified two types of errors related to two forms of prosecutorial misconduct and two pieces of inadmissible evidence: Jones's exercise of his right to remain silent and his use of an offensive slur. We already have concluded that these errors, when considered together, did not affect Jones's substantial rights. *See supra* parts I.B & II. There are no additional errors to accumulate. *Cf. State v. Fraga*, 898 N.W.2d 263, 278 (Minn. 2017). Thus, the cumulative-error doctrine does not apply.

**Affirmed.**