STATE of Minnesota, Respondent,

v.

Jeffrey Arthur KRAUSE, Appellant.

No. A10–1091.

Supreme Court of Minnesota.

July 25, 2012.

Lori Swanson, Attorney General, John B. Galus, Assistant Attorney General, Saint Paul, MN; and David J. Hauser, Otter Tail County Attorney, Fergus Falls, MN, for respondent.

Renée Bergeron, Special Assistant State Public Defender, Saint Paul, MN, for appellant.

## OPINION

ANDERSON, G. BARRY, Justice.

Appellant Jeffrey Arthur Krause asks us to decide whether the district court (1) erred in ruling that he forfeited his right to appointed counsel and (2) denied him procedural due process at his forfeiture-of-counsel hearing.[1] Krause was charged by amended complaint in Otter Tail County District Court with three counts of fourth-degree controlled substance crime and one count of possession of a firearm by an ineligible person. A public defender was appointed to represent him. Prior to trial, the Chief Public Defender for the Seventh Judicial District made a motion to the district court seeking the discharge of the public defender and an order that Krause had forfeited his right to counsel by manipulating the court and making "threatening statements" to his lawyer. After an evidentiary hearing at which Krause was present but not represented by counsel, the court granted the Chief Public Defender's motion, holding that Krause had forfeited his right to counsel due to his "severe misconduct." Krause subsequently appeared pro se at his jury trial. The jury found him guilty of all counts, and the court sentenced him on possession of a firearm by an ineligible person and one count of sale of a controlled substance. The court of appeals affirmed Krause's convictions. We hold that the district court denied Krause his procedural due process rights and remand the case to the district court for an evidentiary hearing, at which Krause shall be entitled to due process protections, to determine whether Krause engaged in "extremely serious misconduct" warranting forfeiture of his right to counsel.

*Complaint*

Krause was charged by amended complaint with the following offenses: (a) Count I: Illegal possession of a firearm (following conviction of crime of violence) in violation of Minn.Stat. § 624.713, subds. 1(2), 2(b) (2008); (b) Count II: Controlled substance crime in the fourth degree in violation of Minn.Stat. § 152.024, subds. 1(1), 3(a) (2010); (c) Count III: Controlled substance crime in the fourth degree in violation of Minn.Stat. § 152.024, subds. 1(1), 3(a); and (d) Count IV: Controlled

---

1. Krause argues that he was denied due process because he was not appointed counsel at his forfeiture-of-counsel hearing. He also argues that the court of appeals violated his Fifth Amendment right to remain silent by using his silence against him. Because we conclude that Krause's due process rights were violated because he was not appointed counsel at his forfeiture-of-counsel hearing, and we remand the case to the district court for an evidentiary hearing with due process protections, we need not address whether Krause's Fifth Amendment right to remain silent was violated.

substance crime in the fourth degree in violation of Minn.Stat. § 152.024, subds. 1(1), 3(a) and Minn.Stat. § 609.11 (2008). The complaint alleged that Krause sold morphine tablets to a confidential informant on three occasions in June and July 2009 and that he possessed a firearm during one of the three sales.[2]

*First Appearance, Rule 8 Hearing, and Omnibus Hearing*

At Krause's first appearance on July 28, 2009, the district court reviewed the charges with Krause, set bail at $50,000, and approved Krause's request for appointed counsel. Assistant Public Defender David Phillipe was appointed to represent Krause and first appeared with him for a Rule 8 hearing. An omnibus hearing was held on August 28, 2009; Phillipe requested a speedy trial and a continuance of 2 to 3 weeks to conduct some necessary legal research.

*October 16, 2009, Pretrial Hearing*

During the pretrial hearing on October 16, 2009, Phillipe told the court that he met with Krause on Thursday or Friday of the previous week and that Krause had indicated that he was firing Phillipe.

The district court explained to Krause that, although the court was responsible for ordering the appointment of a public defender, the public defender's office, not the court, was responsible for the selection of the particular public defender to represent him. The court also warned Krause that the public defender's office might not appoint a different public defender to represent him. The court told Krause that it would not discharge Phillipe as Krause's counsel until replacement counsel was hired.

Krause then told the district court that he wanted to hire a private or "outside" attorney. Krause said he needed to talk with his parents about hiring a lawyer for him or selling his truck. When the district court asked Krause if he wanted to continue with his demand for a speedy trial and keep the October 27, 2009, trial date, or waive that right in order to have more time to hire another attorney, Krause responded, "Whatever you guys want.... that's fine." Krause said he had difficulty making decisions because of the prescription pills and morphine he was taking.

The district court judge briefly recessed the hearing to permit Phillipe to discuss with Krause how his request to discharge Phillipe would affect his request for a speedy trial. When the hearing was reconvened, Phillipe reported that when he attempted to explain to Krause his right to waive his speedy trial demand, Krause started "arguing with [him] about other things." Krause denied that he argued with Phillipe.

The district court judge announced that she was removing herself from the case because she had been the prosecutor in a prior case leading to one of Krause's terroristic-threats convictions. After Krause said he would not have time to hire another attorney by October 27, 2009, and agreed to have the trial reset, the court decided to reset the trial date.

*October 21, 2009, Pretrial Hearing*

At a hearing held on October 21, 2009, Krause reiterated his intention to discharge Phillipe and told the district court he was attempting to retain private counsel. The court reiterated the need to know quickly who would be representing Krause in light of Krause's demand for a

---

**2.** Krause was alleged to be ineligible to possess a firearm because of his previous convic-

tions for terroristic threats in 1998 and 2005.

speedy trial. Krause responded by telling the court that he needed to confer with his family about hiring private counsel. The court announced that it would reconvene the hearing at 9:00 a.m. on October 22, 2009, and expected Krause to tell the court at that time the name of the attorney who would be representing him.

Before adjourning the hearing, the district court provided Krause with a "waiver of counsel" form for him to review in the event he elected to represent himself and discussed with him the difficulties of self-representation and the advantages of counsel. The court also explained to Krause that standby counsel could be appointed for him in the event he elected to waive his right to counsel. The court found good cause to continue the matter until November 3, 2009, for trial.

*October 22, 2009, Pretrial Hearing*

At the beginning of the hearing on October 22, 2009, the district court asked Krause whether he had retained private counsel. Krause said that he had called an attorney the previous day and arranged to meet with the attorney, but the attorney did not appear for the meeting. Krause then said he had not been successful in hiring an attorney and would represent himself.

The district court asked Krause if he wished to proceed pro se. After some initial equivocation, Krause stated that he intended to represent himself. The court conducted a waiver colloquy, and Krause furnished the court with a signed "waiver of counsel" form. The court concluded that Krause had knowingly and intelligently waived his right to counsel and asserted his constitutional right to self-representation. The court also announced that it would appoint standby counsel for Krause. The court further found that good cause would exist to continue the matter despite Krause's speedy trial demand in the event

that standby counsel could not be adequately prepared by the date set for trial. Phillipe was then discharged.

*October 23, 2009, Pretrial Hearing*

Krause appeared pro se with standby counsel, Christopher Cadem, but at the beginning of the hearing Krause told the district court that he was unprepared to represent himself and asked the court to continue the trial because he wished to hire private counsel. Krause said that his sister had spoken to proposed private counsel the previous evening. Krause also waived his speedy trial demand.

With Krause's consent, the district court recessed the hearing to contact the lawyer and confirm the representation. Following the recess, the court announced that the lawyer had sent a message to the court indicating that while he had spoken with Krause's family, no definite financial arrangements had been made. Although Krause was prepared to have the court discharge standby counsel, the court indicated that it would take no further action until the court had confirmation that the lawyer was representing Krause.

*October 29, 2009, Pretrial Hearing*

Krause appeared pro se with advisory counsel and informed the district court that he was unable to hire private counsel. He also told the court that he realized, after looking over the case file, that he could not adequately represent himself. The court again reminded Krause that if he reapplied for a public defender, Phillipe would probably be appointed to represent him. When Krause protested that he and Phillipe did not get along, the court told him that the court did not believe that the record reflected the sort of exceptional circumstances that would require the public defender's office to appoint a different public defender to represent Krause. More specifically, the court said that ex-

ceptional circumstances are those that affect the public defender's ability or competence to represent a defendant and that the record reflected that Phillipe was able and competent to represent Krause.

The district court continued the matter for one week to give Krause an opportunity to reapply for appointed counsel. Following the hearing, Krause applied for appointed counsel, and the public defender's office for the Seventh Judicial District once again assigned Phillipe to represent him.

*Meeting Between Krause and Phillipe on December 3, 2009*

Krause and Phillipe met privately on December 3, 2009. In his affidavit,[3] Phillipe alleges that, at that meeting, Krause made threatening statements.

*Chief Public Defender's Motion for Discharge of the Public Defender and a Finding that Krause Had Forfeited His Right to Court–Appointed Counsel*

On December 11, 2009, Rex Tucker, the Chief Public Defender for the Seventh Judicial District, sought an order discharging the public defender as Krause's counsel and an order that Krause had forfeited his right to court-appointed counsel. Tucker alleged that Krause had complained about Phillipe "[o]n dozens of occasions," but that Phillipe's services were deemed satisfactory by Phillipe's supervisors.

Tucker alleged that Krause's statements to Phillipe during their meeting on December 3, 2009, were "abusive, threatening and harassing in nature" and made "for the clear purpose of manipulating the court process." The motion alleged that the statements were made to intimidate Phillipe and to have him discharged as defense counsel. Although Tucker, in his

motion, recognized that it is the "nature" of the public defender "business" to be "verbally assailed, screamed at and disrespected," he stated that Krause's actions went well beyond "the 'normal course of our business'" and were "reprehensible."

*Hearing on the Chief Public Defender's Motion*

On December 15, 2009, Krause was served with a copy of Tucker's notice of motion and motion. A hearing on the motion was held on December 18, 2009. Tucker represented the district public defender's office and argued in favor of the motion. Krause was present without counsel. During the hearing, Tucker provided the court with a copy of Phillipe's affidavit, and the court recessed the hearing to review it. Phillipe was not present at the hearing.

Following the recess, Krause was provided with a copy of Phillipe's affidavit. After Krause finished reviewing the affidavit, the court addressed Krause as follows:

> Mr. Krause, you do have an opportunity to be heard on the matter. You can tell me what you want me to know. However, I would advise you first that you do have the right to remain silent; that anything you say may be used against you.
>
> With that information in mind, is there anything you want to tell me?

Krause replied, "What can I tell you? The guy's a jerk."

*District Court's Order*

On January 5, 2010, the district court issued an order and memorandum granting Tucker's motion for discharge and finding that Krause had forfeited his right to court-appointed counsel. The court

---

**3.** The district court ordered the affidavit to be sealed "in order to preserve the integrity of attorney/client communications."

found Krause had "forfeited his right to court-appointed counsel by making threatening statements to" Phillipe. The court relied on Phillipe's affidavit to find that Krause made threatening statements to Phillipe, causing Phillipe to become "very concerned" about his safety. The court also took into account that, when given the opportunity to explain himself during the hearing on Tucker's motion, Krause did not deny making the statements recited in Phillipe's affidavit. The court stated that it received a letter from Krause on December 21, 2009, denying the allegation. But the court concluded that the letter was submitted ex parte; the court did not, therefore, consider the letter in reaching its decision.

In support of its forfeiture ruling, the district court further found that Krause had demonstrated a history of attempting to obtain a different public defender to manipulate and delay the proceedings:

> [Krause] has demonstrated a history of attempting to obtain a different public defender and continue the proceedings, despite being repeatedly informed that while he has a right to court-appointed counsel, he does not have the right to a court-appointed attorney of his choosing. [Krause]'s statement during the December 18[th] hearing that [Phillipe] "is a jerk" further indicates to the Court that [Krause] nevertheless continues his desire to have a different public defender appointed to represent him. [Krause]'s threat of December 3[rd] is his last manipulative attempt to have [Phillipe] removed from his case.... This Court will not allow [Krause] to continue behaving in this manner in an effort to have a different public defender assigned to represent him and/or further continue hearings in this matter.

*Trial and Sentencing*

A jury trial commenced on March 9, 2010. Krause proceeded pro se with standby counsel. The jury found Krause guilty on all counts. The district court sentenced Krause on counts 1 and 2 for the sale of a controlled substance and the illegal possession of a firearm.

Krause appealed to the court of appeals, contending that (1) the district court erred in its forfeiture ruling; and (2) the district court violated his right to procedural due process at the forfeiture-of-counsel hearing. *State v. Krause*, A10–1091, 2011 WL 3425978 at *1 (Minn.App. Aug. 8, 2011). The court of appeals affirmed the district court's decision, *id.* at *6, and Krause petitioned our court for further review. We reverse in part and remand the matter to the district court for an evidentiary hearing.

### I.

The dispositive question in this case is whether the district court violated Krause's procedural due process rights in the course of deciding that Krause had forfeited his right to counsel. Because we conclude that the court denied Krause his due process rights, we do not decide whether the court erred in its ruling. Instead, we remand the matter to the district court for an evidentiary hearing with full due process protections to determine whether Krause engaged in "extremely serious misconduct" warranting forfeiture of his right to counsel. In order to guide the court in its decision, we also conclude that credible threats to harm an attorney or an attorney's family may constitute "extremely serious misconduct" warranting forfeiture of the right to counsel.

### A.

Because the alleged threatening statements took place outside of the courtroom,

Krause claims that he was entitled to an evidentiary hearing and contends that the forfeiture-of-counsel hearing on December 18, 2009, did not fulfill due process requirements. We agree.

We review a district court's decision that a defendant has forfeited his right to counsel under a "clearly erroneous" standard of review. *State v. Jones*, 772 N.W.2d 496, 504 (Minn.2009). But we review de novo whether a defendant has been denied due process of law. *State v. Wiegand*, 645 N.W.2d 125, 129 (Minn.2002) ("We review de novo a lower court's ruling on constitutional questions.").

Neither the United States Supreme Court nor our court has articulated what due process requires before a criminal defendant can be deprived of his right to counsel. Although not binding on our court, the court of appeals has stated that when the misconduct giving rise to a forfeiture of the right to appointed counsel does not occur in the court's presence, "an evidentiary hearing is required in order for the court to determine whether the alleged misconduct ... actually occurred." [4] *State v. Lehman*, 749 N.W.2d 76, 82 (Minn.App.2008). The State concedes this point.[5] We agree that an evidentiary hearing is required when the alleged misconduct occurred outside the presence of the court. But neither the court of appeals nor our court has set forth the parameters of such an evidentiary hearing in Minnesota. The Supreme Court, however, has set forth a balancing test in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), for determining the procedural due process protections that are required in a particular context, and we will use that balancing test to frame our discussion here.

The Due Process Clauses of both the Minnesota and United States Constitutions provide that the government cannot deprive a person of "life, liberty, or property without due process of law." U.S. Const. amends. V, XIV; Minn. Const. art. I, § 7. "The due process protection provided under the Minnesota Constitution is identical to the due proces[s] guaranteed under the Constitution of the United States." *Sartori v. Harnischfeger Corp.*, 432 N.W.2d 448, 453 (Minn.1988).

Procedural due process " 'is flexible and calls for such procedural protections as the particular situation demands.' " *Mathews*, 424 U.S. at 334, 96 S.Ct. 893 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). The protections due in a particular case are determined by weighing and balancing several factors [6]:

---

4. In contrast, "when the misconduct giving rise to the forfeiture occurs in the presence of the district court, the forfeiture ruling need not be preceded by such a hearing." *State v. Lehman*, 749 N.W.2d 76, 82 (Minn.App.2008).

5. In addition to citing *Lehman* for this proposition, the State, in conceding the point, also cites the Third Circuit's decision in *United States v. Goldberg*, 67 F.3d 1092, 1102 (3d Cir.1995) (concluding that when the conduct giving rise to a forfeiture of the right to counsel occurs outside of the courtroom, a forfeiture ruling cannot be based entirely on evidence presented at an ex parte hearing).

6. Krause argues that at the time of the hearing, he had not yet forfeited his right to counsel, and therefore was entitled to counsel at the hearing. Although a criminal defendant has a constitutional right to counsel, the Supreme Court has held that this right applies only to "critical stages of the proceedings." *United States v. Wade*, 388 U.S. 218, 224, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). Although courts have found that some pretrial confrontations are "critical stages," such as post-indictment lineups and preliminary hearings, requiring the presence of counsel, no court has found that a hearing on the forfeiture of counsel is a "critical stage." *See* 7 Henry W. McCarr & Jack S. Nordby, *Minne-*

(1) the individual's "private interest that will be affected by the" State's action; (2) the risk of the "erroneous deprivation" of that interest "through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) the State's interest, "including the function involved and the fiscal and administrative burdens" it would face in providing greater procedural safeguards. *Id.* at 335, 96 S.Ct. 893. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333, 96 S.Ct. 893 (quoting *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965)). Consideration of these factors leads us to conclude that a proceeding for forfeiture of counsel calls for appropriate procedural due process protections.

■■ Turning to the *Mathews* factors as applied to Krause, the private interests are obvious and significant. Here, Krause's right to appointed counsel in his criminal proceeding is a fundamental constitutional right. *See Gideon v. Wainwright,* 372 U.S. 335, 343, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Johnson v. Zerbst,* 304 U.S. 458, 462, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) ("[The assistance of counsel] is one of the safeguards ... deemed necessary to insure fundamental human rights of life and liberty."). In addition, Krause's personal liberty was potentially implicated because not having counsel to represent him at trial placed him at a significant disadvantage. *See Johnson,* 304 U.S. at 462–63, 58 S.Ct. 1019 (noting that the right to counsel "embodies a realistic recognition of the obvious truth that the average defendant does not have the professional legal skill to protect himself when brought before a tribunal").

We now turn to the second factor— whether there is any risk of "erroneous deprivation" of the private interests at stake "through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews,* 424 U.S. at 335, 96 S.Ct. 893. Krause claims that the additional safeguard of the assistance of counsel at the hearing would have been valuable. There is support in the record that there was a risk of erroneous deprivation of Krause's right to counsel through the procedures used at the hearing. For example, Krause repeatedly told the court that his medications—which included morphine and prescription pills— made it difficult for him to make decisions. Furthermore, while he did not deny the allegations against him at the hearing, he later submitted a letter to the court denying the allegations, but the court did not consider the letter because the letter was submitted ex parte. The letter is evidence that Krause may have wanted to oppose the claims against him during the hearing but did not understand his right to do so nor how to vindicate that right. If Krause had been represented by counsel at the hearing, counsel could have instructed him on his rights, ascertained his wishes, facilitated the presentation of evidence, and articulated Krause's position to the court. In other words, the presence of counsel at the hearing could have made a difference in the outcome of the hearing.

Finally, we must determine the State's interest and the burdens it would face in

---

sota *Practice—Criminal Law and Procedure* § 8.2 (3d ed.2001). For purposes of this appeal, it is unnecessary to determine whether Krause is correct; our discussion here proceeds using the general procedural due process principles enunciated in *Mathews.* Here, the "liberty" or "property" interest at stake is

Krause's constitutional right to counsel. *See Bd. of Regents of State Colleges v. Roth,* 408 U.S. 564, 569, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.").

providing greater procedural safeguards. *See id.* The State has an interest in " 'maintaining an efficient and effective judicial system.' " *Jones,* 772 N.W.2d at 505–06 (quoting *State v. Courtney,* 696 N.W.2d 73, 82 (Minn.2005)). There is no evidence in the record that providing assistance of counsel for criminal defendants at forfeiture-of-counsel hearings is an unreasonable financial or administrative burden for the State; in fact, given the well-known administrative and other complications associated with pro se parties, providing counsel is arguably beneficial to the State.

 Because Krause's private interests are important, there is a risk of erroneous deprivation of those interests, and the State's interest is correspondingly weaker, the weighing of the *Mathews* factors supports a finding that Krause was denied his right to procedural due process in his forfeiture hearing.[7] After weighing the *Mathews* factors, we hold that in a forfeiture-of-counsel evidentiary hearing, the defendant is entitled to appropriate due process protections, including adequate notice, the assistance of counsel, the ability to present evidence and to confront and cross-examine witnesses, an impartial decision maker, a decision on the record, and a full explanation for the decision.[8]

 We turn next to the specific details of the due process right to assis-

---

7. We note that the denial of Krause's procedural due process rights was aggravated by the manner in which this issue was raised below. A lawyer is required to "zealously assert[ ] the client's position." Minn. R. Prof. Conduct pmbl [2]. In addition, a lawyer must "not knowingly reveal information relating to the representation of a client." Minn. R. Prof. Conduct 1.6(a). By making a motion for forfeiture of counsel in the manner he did, the Chief Public Defender, acting on behalf of the Office of the Public Defender, failed to "zealously" advocate for Krause, took a position that was adverse to Krause's interests, and disclosed confidential information. Defense counsel, faced with circumstances that prohibit continued services as counsel for the defendant, should seek the court's approval to withdraw from the litigation, without disclosing the underlying reasons. If the court requests an explanation for the withdrawal, "[t]he lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient." Minn. R. Prof. Conduct 1.16, cmt. 3. In this manner, defense attorneys can fulfill "their obligations to both clients and the court under Rules 1.6 and 3.3." *Id.* What should not be done is what was done here, in other words, advocating that the client of the Office of the Public Defender should not have counsel provided at public expense.

8. Although not precedential, we find the decision of the Supreme Judicial Court of Massa-

chusetts in *Commonwealth v. Means,* 454 Mass. 81, 907 N.E.2d 646 (2009), persuasive when considering what procedural protections should be provided in forfeiture-of-counsel proceedings like this one. The defendant in *Means* was alleged to have sent a letter to his court-appointed attorney threatening serious harm to the attorney and his family. *Id.* at 651. The court stated:

> Because the consequences of forfeiture of counsel are so severe, the sanction of forfeiture should not be imposed until the defendant has had a full and fair opportunity at a hearing to offer evidence as to the totality of circumstances that may bear on the question whether the sanction of forfeiture is both warranted and appropriate.

*Id.* at 662. The court then provided a list of procedural safeguards that should be provided at forfeiture of counsel hearings:

> [T]he defendant should be represented by counsel. . . . The judge should hear evidence regarding the alleged conduct that may give rise to the finding of forfeiture. The defendant should have the opportunity to offer evidence, and to cross-examine witnesses, both as to the allegations of his misconduct and the totality of the circumstances that may bear on the forfeiture finding, including his mental competency and psychological condition, any other mitigating considerations, and the willingness of appointed counsel to continue the representation.

*Id.*

tance of counsel at the evidentiary hearing. At a forfeiture-of-counsel evidentiary hearing, the defendant has the right to representation by counsel who has no conflict of interest with the defendant. According to Minn. R. Prof. Conduct 1.7(a), "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest." A concurrent conflict of interest exists if "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person, or by a personal interest of the lawyer." Minn. R. Prof. Conduct 1.7(a)(2). Therefore, if the alleged conduct of the defendant involves threats of harm against the appointed public defender, the court must appoint either a public defender from a different district or an attorney otherwise unaffiliated with the district public defender's office to represent the defendant during the forfeiture-of-counsel evidentiary hearing.

## B.

■■■■ Having concluded that Krause's procedural due process rights were violated, we now determine the appropriate remedy. Krause argues that the appropriate remedy is reversal of his convictions and a new trial. The State, on the other hand, asserts that remand for an evidentiary hearing is the appropriate remedy.

The State has the better argument. Several of our cases support remand as the preferred remedy. In *State v. Fageroos*, 531 N.W.2d 199, 200–01 (Minn.1995), the district court closed the courtroom to spectators during the testimony of two minors, and the defendant claimed on appeal that a new trial was required because the district court plainly erred in closing the courtroom in violation of his right to a public trial. We held that, although the record on appeal failed to support closure,

the appropriate initial remedy was a remand for an evidentiary hearing, not retrial:

> While the record on appeal fails to support closure, we believe the case should be remanded again so the state may have the opportunity to establish, if it can, that closure was necessary. If the state cannot establish that closure was necessary, then defendant is entitled to a new trial.

*Id.* at 200; *see also State v. Biebinger*, 585 N.W.2d 384, 385 (Minn.1998) (ruling that "the appropriate initial remedy [for an inadequately supported decision to close the courtroom] is a remand for an evidentiary hearing, not retrial"); *State v. McRae*, 494 N.W.2d 252, 260 (Minn.1992) ("[T]he remedy should be appropriate to the violation. If a remand for a hearing on whether there was a specific basis for closure might remedy the violation of closing the trial without an adequate showing of the need for closure, then the initial remedy is a remand, not a retrial.").

We also ordered a remand for further proceedings rather than a new trial in *State v. Licari*, 659 N.W.2d 243 (Minn. 2003). Licari was convicted of second-degree murder in connection with the death of his spouse. *Id.* at 246. The "[p]olice discovered much of the evidence upon which [Licari] was convicted during a warrantless search of a storage unit rented by [Licari]." *Id.* On appeal, we held that the landlord's contractual right to inspect the storage unit did not give her actual authority to consent to the search, the police officer's mistaken belief that the landlord had authority to consent to the search was not reasonable for purposes of the apparent authority exception to the warrant requirement, and the intrusion was not justified under the plain-view exception to the warrant requirement. *Id.* at 250–54. Rather than reversing Licari's

murder conviction and ordering a new trial, we remanded for further proceedings to give the State an opportunity to prove that the fruits of the warrantless search were admissible because they would have been inevitably discovered. *Id.* at 255–56. We noted that we have the authority to order such a remand pursuant to Minn. R.Crim. P. 28.05, subd. 2, and 29.04, subd. 11. *Licari*, 659 N.W.2d at 256.

Giving Krause a full evidentiary hearing with appointed counsel remedies the district court's violation of his due process rights. If, after the evidentiary hearing, the district court finds that Krause's right to counsel was violated, the district court should then vacate the convictions and order a new trial. On the other hand, if the district court concludes, following an evidentiary hearing, that Krause forfeited his right to appointed counsel, a new trial is not necessary.

## C.

Because we conclude that the district court denied Krause his due process rights, we do not decide whether the district court erred in its ruling. Instead, we remand the matter to the district court for an evidentiary hearing with the due process protections outlined above to determine whether Krause engaged in "extremely serious misconduct" warranting forfeiture of his right to counsel.[9] *Goldberg*, 67 F.3d at 1102. In order to guide the district court in its decision, we now discuss the conduct necessary for a defendant to forfeit the right to counsel.

 Forfeiture results in the loss of the right to counsel regardless of the defendant's knowledge of either the consequences of his actions or the dangers of self-representation.[10] *Id.* at 1100. Forfei-

---

9. Because we conclude that, as a matter of law, the facts of this case do not rise to the level of the "extremely dilatory" conduct found in *State v. Jones*, 772 N.W.2d 496, 506 (Minn.2009), we limit the remand to a determination of whether Krause engaged in " 'extremely serious misconduct.' " *Id.* at 514 (Meyer, J., dissenting) (quoting *Goldberg*, 67 F.3d at 1101–02). First, there is evidence that Krause was not attempting to manipulate or delay the proceedings but rather was having difficulty retaining private counsel due to his limited financial resources and was having trouble making decisions regarding counsel due to his medications and lack of education. Second, even if he was attempting to delay the proceedings, his conduct did not rise to the level of "extremely dilatory conduct" found in *State v. Jones*, 772 N.W.2d at 506. The delay in proceedings caused by Krause's attempts to retain/apply for counsel lasted from October 16 to November 2, 2009, a period of 17 days, while the delay in *Jones* lasted a full year. *Id.*

10. "Though the right to counsel is a constitutional requirement," we have said that the right to counsel "may be relinquished in three ways: (1) waiver, (2) waiver by conduct, and (3) forfeiture." *Jones*, 772 N.W.2d at 504.

Waiver and waiver by conduct are not at issue here. "A waiver is an intentional and voluntary relinquishment of a known right." *Goldberg*, 67 F.3d at 1099. The "Supreme Court has made clear that a waiver of the right to counsel must be knowing, voluntary and intelligent." *Id.* (citing *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). Waiver by conduct, on the other hand, is a hybrid situation that combines waiver and forfeiture. *Id.* at 1100. "Once a defendant has been warned that he will lose his attorney if he engages in dilatory tactics, any misconduct thereafter may be treated as an implied request to proceed pro se and, thus, as a waiver of the right to counsel." *Id.* Waiver by conduct "could be based on conduct less severe than that sufficient to warrant a forfeiture," since a waiver by conduct "requires that a defendant be warned about the consequences of his conduct, including the risks of proceeding pro se." *Id.* at 1101. Here, Krause did not waive his right to counsel, because he clearly stated he was unable to represent himself and wanted an attorney. Furthermore, he did not waive his right to counsel by conduct, because the district court, although it warned him that it was unable to appoint him differ-

ture of the right to counsel "does not require the court to conduct a waiver colloquy with the defendant" and is "usually reserved for severe misconduct, when other efforts to remedy the situation have failed." *Jones,* 772 N.W.2d at 505.

The district court concluded that Krause "forfeited his right to court-appointed counsel by making threatening statements" to Phillipe. In reaching its conclusion, the court relied on Phillipe's affidavit and the fact that Krause did not deny the content of the affidavit. Krause claims that his statements to Phillipe during their December 3, 2009, meeting do not constitute "extremely serious misconduct" warranting forfeiture based on the case law of Minnesota or other jurisdictions.

The only reported Minnesota case to hold that a defendant forfeited his right to counsel due to "extremely serious misconduct" is *State v. Lehman,* 749 N.W.2d 76, 79 (Minn.App.2008), which involved a defendant who physically attacked his court-appointed lawyer. In that case, the court of appeals stated:

> We conclude that the district court did not abuse its discretion by determining that appellant had forfeited his right to an attorney by attacking his public defender in open court. No court can carry on its business in an atmosphere of violence, fear, and intimidation.

*Id.* at 82 (footnote omitted). Consistent with *Lehman,* other jurisdictions have held that a defendant forfeits his right to counsel when he physically attacks or assaults his counsel. *See Gilchrist v. O'Keefe,* 260 F.3d 87, 90, 99–100 (2d Cir.2001) (ruling that a habeas petitioner had not been unconstitutionally deprived of counsel during a sentencing proceeding based on a state court finding of forfeiture because the peti-

tioner punched his counsel in the head); *United States v. Leggett,* 162 F.3d 237, 250–51 (3d Cir.1998) (holding that a defendant's unprovoked physical battery of his attorney at a hearing qualifies as the sort of "extremely serious misconduct" that amounts to the forfeiture of the right to counsel); *Wilkerson v. Burge,* No. 03 CIV 3857PKC, 2005 WL 1705298, at *5 (S.D.N.Y. July 20, 2005) (holding that a habeas petitioner was not entitled to relief from a state court's determination that he had forfeited his right to counsel by physically assaulting his attorney and threatening to put a contract on his attorney's life).

Forfeiture of counsel has also been found in cases in which a defendant has threatened the life of his counsel or engaged in a pattern of threatening and abusive behavior. *Commonwealth v. Thomas,* 879 A.2d 246, 258 (Pa.Super.Ct.2005) (holding "that appellant forfeited his right to counsel through his pattern of serious misconduct, abuse, threats, and utter failure to collaborate in his own defense"); *see United States v. Thompson,* 335 F.3d 782, 785 (8th Cir.2003) (concluding that defendant's threat to kill his counsel justified permitting counsel to withdraw and refusing to appoint substitute counsel); *United States v. McLeod,* 53 F.3d 322, 325–26 (11th Cir.1995) (holding that defendant forfeited his right to counsel by verbally abusing and threatening to harm his attorney, threatening to sue his attorney on four different occasions, and attempting to persuade his attorney to engage in unethical conduct); *People v. Sloan,* 262 A.D.2d 431, 693 N.Y.S.2d 52, 53 (1999) (concluding "that the defendant forfeited his right to counsel by his persistent pattern of threatening, abusive, obstreperous, and uncoop-

ent counsel, never warned him that his misconduct would result in the loss of his counsel.

erative behavior with successive assigned counsel"); *State v. Carruthers*, 35 S.W.3d 516, 550 (Tenn.2000) (holding that a defendant forfeited his right to counsel when he verbally abused and refused to communicate with a succession of attorneys).

Consistent with that case law, we conclude that credible threats to harm an attorney or an attorney's family may constitute "extremely serious misconduct" warranting forfeiture of the right to counsel. We do not decide whether the statements occurring here rise to the level of "extremely serious misconduct." Therefore, if the district court, after an evidentiary hearing accompanied by appropriate due process protections, concludes that Krause's statements to Phillipe during their December 3, 2009, meeting were credible threats to harm Phillipe or his family, then it would be appropriate for the court to hold that Krause forfeited his right to counsel. If, on the other hand, the court concludes that Krause's statements were not credible threats to harm Phillipe or his family, then the court should reverse Krause's convictions and order a new trial.

Reversed in part and remanded.