STATE OF MINNESOTA

IN SUPREME COURT

A22-0748
A24-1754

Hennepin County                                                                Moore, III, J.

State of Minnesota,

        Respondent,

vs.                                                                Filed:  September 3, 2025
                                                                Office of Appellate Courts

Buay David Duol,

        Appellant.

_____

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Matthew D. Hough, Assistant County Attorney, Minneapolis, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Julie L. Nelson, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

_____

S Y L L A B U S

A district court judge's deliberate independent investigation and consideration of extra-record facts in denying a petition for postconviction relief violates the petitioner's constitutional right to an impartial judge.  Such a violation is a structural error requiring automatic reversal under the Due Process Clause of the Minnesota Constitution.

Reversed in part and remanded.

1

MOORE, III, Justice.

The issue in this appeal is whether appellant Buay David Duol is entitled to a new evidentiary hearing on his petition for postconviction relief because the district court, in denying relief, investigated and considered facts outside the record. In 2022, Duol was found guilty and convicted in Hennepin County District Court of first-degree premeditated and second-degree intentional murder for the shooting death of Lavelle Jackson. The district court sentenced Duol to life in prison without the possibility of supervised release. Duol appealed, and we granted his request to stay his direct appeal to allow him to petition for postconviction relief based on a claim of newly discovered evidence.

Duol's newly discovered evidence claim rested primarily on new testimony from Dequarn Bell, who had been in jail with Duol as he awaited trial. Duol argued that if presented at trial, Bell's testimony would have "neutralized" the testimony of one of the State's key witnesses, who testified that Duol confessed to murdering Jackson. After an evidentiary hearing, the district court denied Duol's petition for a new trial. One of the district court's conclusions was that Bell's testimony was not credible. In reaching that determination, the district court discussed numerous factual details from Bell's criminal history. Some of the facts the district court discussed and considered relating to Bell's adult and juvenile convictions were not entered into the record by either party but were extra-record facts based upon the district court's deliberate independent investigation.

Duol now appeals from the denial of his petition for postconviction relief. He asks that we reverse his convictions and remand for a new trial, or in the alternative, remand for

a new evidentiary hearing on the grounds that the district court's investigation into facts outside the record relating to Bell's criminal history violated Duol's constitutional right to an impartial judge under *State v. Dorsey*, 701 N.W.2d 238, 252–53 (Minn. 2005). Duol further argues that the district court judge was disqualified from presiding over the hearing under Minnesota Code of Judicial Conduct Rule 2.11(A) due to the appearance of bias and was thus required to recuse himself under Minnesota Rule of Criminal Procedure 26.03, subdivision 14(3).

Here, we conclude that the district court violated Duol's right to due process by independently investigating extra-record details related to Bell's criminal history and considering those facts in assessing Bell's credibility. The district court thus committed structural error that entitles Duol to a new evidentiary hearing on his claim of newly discovered evidence before an impartial judge. We therefore reverse the decision of the district court denying postconviction relief and remand for proceedings consistent with this opinion.

### FACTS

The facts essential to this appeal are as follows. In January 2022, after an eleven-day trial, a Hennepin County jury found Duol guilty of first-degree premeditated murder and second-degree intentional murder for the shooting death of Lavelle Jackson at Jackson's home in Minneapolis. The district court accordingly sentenced Duol to life in prison without the possibility of supervised release.

Among the witnesses who testified for the State at trial was S.P. When Duol was arrested, S.P. was an inmate in the Hennepin County jail awaiting sentencing. S.P. testified

3

as follows: Duol approached S.P. at the jail, introduced himself, and asked to talk to S.P. about his case. Duol told him that he was in jail "on a body," which S.P. explained meant "[Duol] killed somebody." Duol told S.P. that the victim, Jackson, had been in a relationship with the mother of Duol's child. Duol said he killed Jackson to help protect his child from mistreatment by Jackson. Duol asked S.P. for advice, and S.P. told him that he could help find someone to create an alibi for the time of the murder.[1] But S.P. ultimately declined to help Duol because Duol did not have enough money to pay him. S.P. also testified that Duol repeatedly tried to get in contact with Duol's brother (who had driven him to Jackson's house) to "tie up some loose ends." S.P. advised Duol that jail calls were monitored, so if Duol needed to communicate with anyone, to use the mail.

When asked what his motivation was for testifying against Duol, S.P. testified that he "[felt] bad for, you know, the man who died and his family and stuff," and that his girlfriend encouraged him to "do the right thing" by cooperating with police. In exchange for S.P.'s agreement to testify at the grand jury proceeding and at Duol's trial, the State agreed to reduce S.P.'s presumptive sentence of 60 months in prison to a probationary sentence including local incarceration.

---

[1] S.P. testified that he offered to help Duol "formulate some witnesses to back up his story of where he was," because "if you ain't got no alibi, you know, and you got people saying you did this, then they're going to end up getting you, and charging you, convicting you."

After Duol was found guilty and convicted, Duol directly appealed from his convictions.[2] In January 2023, Duol requested that we stay his direct appeal to allow him to petition for postconviction relief. We granted the stay. *State v. Duol*, No. A22-0748, Order at 1–2 (Minn. filed Jan. 13, 2023). In March 2023, Duol petitioned for postconviction relief. Duol stated in his petition that when he was sent to MCF-Rush City after his trial, he encountered Dequarn Bell, who had been part of the same pod at the Hennepin County Jail with Duol and S.P. in November 2020. Duol's postconviction petition claimed that Bell "expressed regret when he saw Duol and learned that he had been convicted because Bell knew [S.P.] had worked with the state to convict Duol in exchange for a deal on [S.P.'s] pending charges."

A defense investigator interviewed Bell. Bell told the investigator that in November 2020, Duol "repeatedly told other inmates that he was being framed by the police and that he did not kill anyone." Bell also reported that "[S.P.] was a jailhouse snitch who had no problem with 'jumping' on other people's cases to get out of jail." Bell said that S.P. had approached him to suggest testifying against Duol so that they might lessen their own sentences.[3]

---

[2]    We note that the State relied on several other witnesses and sources of evidence to bring its case against Duol. These additional facts are omitted here because they are not relevant to the narrow claim resolved in this appeal.

[3]    Duol's petition for postconviction relief also raised arguments based on statements by Bell about Duol's discovery materials, including that Bell saw "[S.P.] go through Duol's discovery when Duol was not around."

Duol's postconviction petition requested that the district court reverse Duol's convictions based on "newly discovered evidence that undermines S.P.'s testimony about Duol's involvement in Jackson's murder." Duol argued that "[S.P.] was one of the state's key witnesses. Without S.P.'s false testimony, there was scant other evidence linking Duol to Jackson's murder. As such, the jury might have either acquitted Duol or the trial might have ended in a hung jury." Duol submitted two affidavits along with his petition, one from the investigator who interviewed Bell, and another from Duol's trial attorney. Duol requested reversal of his convictions and a new trial, or in the alternative, an evidentiary hearing on Bell's proposed new testimony.

The district court judge presiding over Duol's trial granted Duol's request for a postconviction evidentiary hearing, and a different district court judge presided over the hearing. Duol called two witnesses, Bell and the trial attorney, to testify. Bell testified that he was housed with both Duol and S.P. in November 2020, and that he and S.P. had discussed "conspiring to maybe . . . jump on [Duol's] case." Bell testified that this plan would involve gathering information about Duol's case and giving the information, including, if needed, made-up details, to the police to help the State convict Duol. Bell testified that he did not see Duol show his discovery to S.P., which contradicted his earlier statement to the investigator that he had seen S.P. reviewing the discovery. Asked at the hearing about this discrepancy, Bell stated that whatever he told the investigator was correct. The trial attorney testified that Bell's testimony would have "neutralize[d]" S.P.'s testimony at trial, which included that Duol confessed to Jackson's murder, and that "at the

6

end of the day, there really wasn't much else to put this murder on Mr. Duol. . . . They needed [S.P.]."

After the one-day evidentiary hearing, the district court issued a thorough and detailed 73-page order denying Duol's petition for relief. Because the parties did not agree over which legal test applied to Duol's claim, and because "the Supreme Court will . . . be reviewing this Court's order and opinion," the district court analyzed Duol's newly discovered evidence claim under two tests: the three-prong test from *Larrison v. United States*, 24 F.2d 82, 87–88 (7th Cir. 1928), *overruled by United States v. Mitrione*, 357 F.3d 712, 718 (7th Cir. 2004), *vacated on other grounds*, 543 U.S. 1097 (2005),[4] for claims of false trial testimony, and the four-prong test from *Rainer v. State*, 566 N.W.2d 692 (Minn. 1997), for claims of newly discovered evidence. The district court concluded that under either test, Duol failed to show a new trial was required.

Central to the district court's analysis under both legal standards was the question of Bell's credibility as a witness. In determining that Bell was not credible, the district court's ruling relied on details about Bell's criminal history that were not in the record. These extra-record facts were not presented at the hearing or by any of the parties and were instead the product of the district court's independent investigation. In particular, it is undisputed that the district court cited to and discussed factual details about Bell's prior first-degree criminal sexual assault conviction—taken from the plea hearing transcript, the

---

[4]     Although *Larrison* was overruled in *Mitrione*, "Minnesota courts continue to apply the *Larrison* test in cases involving witness-recantation and false-testimony claims." *Gilbert v. State*, 2 N.W.3d 483, 486 n.3 (Minn. 2024), *reh'g denied* (Mar. 1, 2024) (citation omitted) (internal quotation marks omitted).

7

presence investigation, and the opinion of the Minnesota Court of Appeals in *State v. Bell*, 971 N.W.2d 92 (Minn. App. 2022), *rev. denied* (Minn. Apr. 27, 2022)—as well as details related to Bell's other adult felony and misdemeanor convictions, and his juvenile criminal history. Some of the statements in the district court's order that relied on information outside the record included:

> After eleven days of jury selection and trial, Bell pleaded guilty, on October 14, 2020, to all three charges and to the heinous enhancing factor of intentionally causing great bodily harm by using a hot curling iron to leave serious, permanent scars—a total of 14 burns—on the victim's face, neck, chest, back, underarms, and leg and also by penetrating her vagina with the hot curling iron.
>
> Bell also has felony convictions for (1) violation of a DANCO, in Court File No. 27-CR-17-21424 (convicted in 2017), (2) domestic assault, in Court File No. 27-CR-18-25687 (although charged as a felony, Bell received a gross misdemeanor sentence pursuant to his plea agreement upon his conviction in 2018), (3) second-degree riot, in Court File No. 27-CR-13-18185 (Bell received a stay of imposition upon his conviction and sentence in 2013, so this conviction was deemed a misdemeanor), as well as (4) a misdemeanor conviction for providing a fictitious name or false statement in Court File No. 27-CR-17-13886 (convicted in 2017). Like [S.P.] . . . Bell also had an extensive criminal history as a juvenile as well as adult misdemeanor convictions.
>
> . . . .
>
> . . . It can be true that [S.P.]'s actions were motivated by both the desire to obtain a better plea agreement for himself as well as to bring forward information in a serious murder case that weighed on him. (All but one of [S.P.]'s felony convictions were for crimes of dishonesty—theft, burglary, financial transaction card theft, etc.—not brutal personal crimes of violence, like Duol's murder of Jackson or the particularly brutal and heinous manner in which Bell sexually assaulted the victim in his criminal sexual assault case (testimony in that case established that Bell used a 400-degree curling iron to penetrate her vagina and also to leave serious burns over much of her body). The portions of Bell's testimony that may be credible, if they were believed by a trier of fact, do not demonstrate that [S.P.]'s trial

8

testimony on some points is false, they merely open the door to more than one explanation for [S.P.]'s actions.

. . . The district court originally imposed a sentence of life with parole eligibility after 30 years for Bell on his first-degree criminal sexual conduct conviction, but that sentence was vacated and remanded for resentencing on Bell's appeal. *See State v. Dequarn Bell*, 971 N.W.2d 92, 107–111 (Minn. App. 2022), *rev. denied*, Minn. (April 22, 2022); *State v. Dequarn Bell*, Court File No. 27-CR-19-22461, Dk Nos. 78 (original district court sentencing order, December 4, 2020) & 107 (sentencing order on remand, September 23, 2022).

*Duol v. State*, No. 27-CR-20-21445, Order at 18–19, 62–63, 63 n.57 (Henn. Cnty. Dist. Ct. filed Oct. 21, 2024) (citations omitted).

Duol now appeals from the denial of his petition for postconviction relief, arguing that he is entitled to a new trial, or in the alternative, that the inclusion of these extra-record facts entitles him to a new evidentiary hearing.

## ANALYSIS

Duol argues that he is entitled to a new trial because the district court wrongly denied his petition for postconviction relief based on newly discovered evidence. We do not reach that ultimate issue, however, because we instead find for Duol on his alternative argument that he is entitled to a new evidentiary hearing because the district court investigated and relied on facts outside the record in denying his petition for postconviction relief.[5] Duol's claim has two distinct threads. Duol argues first that the district court's

---

[5] We have never squarely addressed the remedy resulting from a district court's deliberate independent investigation and use of extra-record facts in a postconviction evidentiary hearing, but we have addressed the remedy for a denial of counsel at a postconviction evidentiary hearing. *See State v. Krause*, 817 N.W.2d 146, 147 (Minn. 2012). In *Krause*, the court remanded for a new evidentiary hearing, as opposed to a new

9

deliberate independent investigation and use of extra-record facts violated his constitutional right to an impartial judge. Second, Duol contends that the district court judge's extra-record investigation disqualified him from presiding over the hearing under the Minnesota Code of Judicial Conduct Rule 2.11(A) (stating that "[a] judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned"), and Minnesota Rules of Criminal Procedure 26.03 (which states that a "judge must not preside at a trial or other proceeding if disqualified under the Code of Judicial Conduct"). Because we conclude that the use of extra-record information pertaining to Bell's prior convictions constituted a violation of Duol's constitutional right to an impartial judge—and that this error was structural under the Due Process Clause of the Minnesota Constitution and therefore requires reversal and remand for a new evidentiary hearing before an impartial judge—we do not reach Duol's arguments relying on the Minnesota Code of Judicial Conduct and Minnesota Rules of Criminal Procedure.

## A.

Duol's contention that he was denied the constitutional right to an impartial judge is a legal question, which we review de novo. *State v. Lopez*, 988 N.W.2d 107, 120 (Minn.

---

trial, relying on the legal principle that a remedy should be appropriate to the violation and retrial is not required if a remand will remedy the violation. *Id*. The *Krause* court explained that although this principle had been articulated in the slightly different contexts of courtroom closures and the admission of evidence seized during a warrantless search, it applied with equal force to the denial of counsel. *Id*. at 147–48; *see also State v. Jackson*, 977 N.W.2d 169, 176 (Minn. 2022) (remand for new public hearing appropriate remedy after the improper closure of a post-trial *Schwartz* hearing). This legal principle applies with equal force when a due process violation occurs due to a district court's deliberate independent investigation and use of extra-record facts in a postconviction evidentiary hearing.

10

2023).   The Fourteenth Amendment to the United States Constitution and Article 1, Section 7 of the Minnesota Constitution entitle criminal defendants to due process.   U.S. Const. amend. XIV; Minn. Const. art. 1, § 7.   These due process rights include the fundamental right to a fair trial and "a fair and impartial judge."   *Cuypers v. State*, 711 N.W.2d 100, 104 (Minn. 2006) (citing *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997)); *see also Rose v. Clark*, 478 U.S. 570, 577 (1986) ("The state of course must provide a trial before an impartial judge . . . .").   We have stated that an impartial trial process "requires that conclusions reached by the trier of fact be based upon the facts in evidence," and "prohibits the trier of fact from reaching conclusions based on evidence sought or obtained beyond that adduced in court."   *State v. Dorsey*, 701 N.W.2d 238, 249–50 (Minn. 2005).

We have recognized a "bright-line rule that judges may not engage in independent investigations of facts in evidence . . . ."   *Id.* at 251; *see also Lopez*, 988 N.W.2d at 119 (reaffirming this principle).   When a district court judge does so, they no longer act as a fair and impartial judge.   We have never recognized an exception to this guardrail.   Even though we have acknowledged that adopting a more flexible standard may result in a "less distasteful outcome" in some cases, we have said that our failure to apply this rule uniformly "would permanently compromise the bedrock principle in our criminal justice system that judges may not investigate or rely upon extra-record knowledge when sitting as the finder of fact."   *Dorsey*, 701 N.W.2d at 251.

Duol argues that he is entitled to a new evidentiary hearing because the district court's investigation into Bell's criminal history deprived Duol of his constitutional right

to an impartial judge. Duol states that at the evidentiary hearing, "the parties presented to the [district] court only limited information about Bell's criminal history." At the hearing, the State impeached Bell's credibility by introducing evidence of four prior convictions—but the extent of the record on those convictions was only the offense name, date of conviction, and court file number. Duol notes that the State did not introduce any additional evidence regarding Bell's offenses and did not question Bell about them at the hearing.

The State does not dispute that the district court's order denying relief "contained information about Bell's criminal history that was not part of the postconviction record." Specifically, the State agrees the order contained details related to Bell's first-degree criminal sexual assault—including information about the victim, the plea hearing transcript, presentence investigation, and opinion at the court of appeals—as well as facts pertaining to Bell's adult felony convictions, adult misdemeanor convictions, and juvenile criminal history. The State concedes that "[g]iven both the amount and specificity of the extra-record material included in the [district] court's order, it logically follows that the [district] court inquired into this information," and that "it appears the [district] court then used this information when making credibility determinations about Bell[.]"

As we set forth above, under the due process guarantees of the Minnesota and United States Constitutions, there is a "bright-line rule" that prohibits the trier of fact from conducting deliberate independent investigations of extra-record facts and then considering those facts. *Dorsey*, 701 N.W.2d at 249; *Lopez*, 988 N.W.2d at 118. Applying that rule here, the district court's deliberate independent investigation and use of extra-record facts

12

in the order denying an evidentiary hearing violated Duol's constitutional rights under the Minnesota and United States Constitutions.

The State offers several theories for why we should not reach such a conclusion here, but none of them are persuasive. First, the State argues that Minn. Stat. § 590.04, subd. 3, which governs hearings on petitions for postconviction relief, empowered the district court to conduct independent extra-record investigations. This is not the case. Section 590.04, subdivision 3, states that a district court judge presiding over a postconviction hearing "may inquire into and decide any grounds for relief, even though not raised by the petitioner." It would strain the text of the statute to interpret this provision, which permits a district court judge to grant relief on grounds the petitioner did not raise, as authorizing a district court judge to conduct a wide-ranging investigation into facts outside the record in order to deny relief. Moreover, because defendants possess the right to an impartial judge under the Minnesota and United States Constitutions, which includes a judge's duty to refrain from conducting their own factual investigations, interpreting the statute as the State asks us to would raise important questions regarding its constitutionality. We therefore reject the State's assertion that section 590.04, subdivision 3, authorized the use of extra-record facts here.

Second, the State reasons that the rule we established in *Dorsey* was "specific to a *criminal trial*," and that the rule does not apply to postconviction proceedings. We have never considered a case involving an allegation of judicial bias in a postconviction proceeding and therefore have not had occasion to state definitively that the right to an impartial judge applies in postconviction proceedings. But we have emphasized that a

13

"judge must maintain the integrity of the adversary system *at all stages* of the proceedings." *State v. Schlienz*, 774 N.W.2d 361, 367 (Minn. 2009) (emphasis added). Because postconviction proceedings are intended to "vindicate [the] denial of fundamental rights and thereby prevent manifest injustice," *Butala v. State*, 664 N.W.2d 333, 338 (Minn. 2003), today we clarify that postconviction proceedings, just as criminal trials and direct appeals, must comport with the fundamental due process guarantees of the United States and Minnesota Constitutions. We therefore reject the State's argument that the constitutional right to an impartial judge does not apply in this case.

Finally, the State contends that this case is distinguishable from those in which we have previously held the investigation and use of extra-record facts to be constitutionally impermissible. The State argues that because the district court judge here did not discuss any extra-record facts at the postconviction hearing itself, the State did not have "an advantage at the evidentiary hearing like the factfinder did for the State during the bench trial in *Dorsey*." But the constitutional prohibition on independent judicial investigations that we established in *Dorsey* does not turn on whether the investigation provides an advantage to either party in practice. This is because the very "*act* of seeking information outside the record effectively transform[s] the court into an investigator . . . thereby eliminating any vestige of impartiality." *Lopez*, 988 N.W.2d at 119 (alteration omitted) (emphasis added) (citation omitted) (internal quotation marks omitted). Both the state and federal constitutions prohibit this practice, regardless of whether it is done in open court or

a written order.  The State's third and final argument that there was not a constitutional violation here therefore fails.[6]

B.

Accordingly, we turn to the proper remedy for the violation of Duol's due process rights.  In *Dorsey*, we held that the deprivation of the "basic protection" of an impartial judge is a "structural error" that requires reversal without questioning whether the error is harmless.  *Dorsey*, 701 N.W.2d at 253.  Generally, if a defendant "had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis."  *Rose*, 478 U.S. at 579.  But "structural defects in the constitution of the trial mechanism . . . defy analysis by harmless-error standards."  *Arizona v. Fulminante*, 499 U.S. 279, 309 (1991).  In *Fulminante*, the U.S. Supreme Court specifically referenced the right to an impartial judge as one such structural error.  *Id.* at 309; *see also Gray v. Mississippi*, 481 U.S. 648, 668 (1987) ("[S]ome constitutional rights are so basic to a fair trial that their infraction can never be treated as harmless error. . . . The right to an impartial adjudicator, be it judge or jury, is such a right." (alteration omitted) (citation omitted) (internal quotation marks omitted)).

The State asserts that "[o]n this record, [the district court's] inclusion of the information was harmless error," because Duol's request for a new trial would have failed regardless of the district court's views as to Bell's credibility.  But applying a harmless-

---

[6]     The State does not assert that any of the district court's conduct here fell within the purview of what is permitted by judicial notice, and we therefore do not pass upon that issue.

15

error analysis here would be inconsistent with the bright-line rule we applied in *Dorsey*. *See* 701 N.W.2d at 251. In *Dorsey* we were, as we are in this case, "confident that the judge . . . was motivated by [their] desire to seek the truth and be candid about what [they] knew." *Id.* at 250. Nevertheless, we emphasized in *Dorsey* and *Lopez* that a deliberate independent investigation and use of extra-record facts undermines the factfinder's duty "to make factual determinations solely on the basis of evidence in the record," and therefore is a structural defect, that requires reversal without inquiry into whether the error would have changed the outcome. *Dorsey*, 701 N.W.2d at 250–53; *Lopez*, 988 N.W.2d at 119–20; *see also State v. Shoen*, 598 N.W.2d 370 (Minn. 1999).

Reversal in part and remand for a new evidentiary hearing without consideration of a harmless error analysis is the required result here as well. We recognize that this is a difficult case involving complex trial court proceedings, including the challenging circumstance of a district court judge taking over a murder case already at the postconviction stage. But because Duol's due process rights were violated by the district court's deliberate independent investigation and use of extra-record facts, we reverse the district court's decision denying Duol's petition for postconviction relief. On remand, Duol is entitled to a new evidentiary hearing on his claim of newly discovered evidence before an impartial judge.[7]

---

[7] Because we conclude that the use of extra-record information pertaining to Bell's prior convictions constituted structural error under the Due Process Clause of the Minnesota Constitution, we need not address whether the district court judge who presided over the postconviction hearing had to recuse under Minnesota Code of Judicial Conduct Rule 2.11(A) and Minnesota Rules of Criminal Procedure 26.03. On remand, Duol is

16

We conclude by emphasizing that the Minnesota Constitution's guarantee of due process includes the right to an impartial judge. Minn. Const. art. 1 § 7. We therefore clarify that our holding in this case—that due process requires a bright-line rule prohibiting independent judicial investigations into facts outside the record and that such an investigation constitutes a structural error—is based separately and independently on the Minnesota Constitution.[8] *See Michigan v. Long*, 463 U.S. 1032, 1041 (1983).

## CONCLUSION

For the foregoing reasons, we reverse the decision of the district court in part and remand for proceedings consistent with this opinion.

Reversed in part and remanded.

---

entitled to a new evidentiary hearing before an impartial judge. As in all criminal cases, the remand is subject to Minnesota Code of Judicial Conduct Rule 2.11(A) and Minnesota Rules of Criminal Procedure 26.03, subdivision 14.

[8] Although *Fulminante* and *Gray* point to the same rule applying under the United States Constitution, we maintain our holding under the Minnesota Constitution even assuming a contrary rule under federal law.